Dear Senator Cain
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Would execution of the nationally recognized "FiveWishes ® "advance directive form, by an individual of soundmind and 18 years of age or older, give a patient's attendingphysician knowledge of informed consent that artificiallyadministered hydration and artificially administered nutritionshould be withheld or withdrawn pursuant to the Hydration andNutrition for Incompetent Patients Act, 63 O.S. 2001, §§3080.1-3080.5?
 2. Would execution of the "Five Wishes ® "advancedirective form by an individual of sound mind and 18 years of ageor older constitute "clear and convincing evidence" of informedconsent that artificially administered hydration and artificiallyadministered nutrition should be withheld or withdrawn pursuantto the Hydration and Nutrition for Incompetent Patients Act, 63O.S. 2001, §§ 3080.1[63-3080.1] -3080.5?
 3. Is the nationally recognized "Five Wishes ® "advancedirective form in "substantially" the form of the OklahomaAdvance Directive for Health Care, 63 O.S. Supp. 2005, §3101.4[63-3101.4] (B), when executed by an individual of sound mind and 18years of age or older and witnessed by two individuals who are 18years of age or older and who are not legatees, devisees, orheirs at law?
 4. Is the Oklahoma Rights of the Terminally Ill orPersistently Unconscious Act, 63 O.S. 2001 Supp. 2005, §§3101.1 -3102A, which limits an individual's right to permit thewithholding or withdrawal of artificially administered hydrationand artificially administered nutrition in advance of incapacity,constitutional?
¶ 1 You ask about the use in Oklahoma of the nationally recognized "Five Wishes ® "advance directive form which allows individuals to communicate their wishes for life-sustaining treatment when they are no longer able to communicate such wishes themselves. Five Wishes ® is a copyrighted document of Aging with Dignity, a Florida private, not-for-profit organization.[1]
¶ 2 Five Wishes ®, like Oklahoma's statutory advance directive form set forth at 63 O.S. Supp. 2005, § 3101.4[63-3101.4](B), provides it may be used by anyone at least 18 years of age, and is dated and signed by the declarant in the presence of two witnesses who must also be at least 18 years of age, who are not legatees, devisees or heirs at law of the declarant. Id. § 3101.4(A). Both forms: (1) allow a declarant to name a health care proxy and an alternate proxy to make life-sustaining treatment[2] decisions for the declarant, if the declarant's attending physician and another physician finds the declarant is no longer able to make his or her own health care decisions; (2) allow a declarant to indicate anatomical gifts he or she desires to make upon death; (3) contain statements that the documents may be revoked at any time; and (4) provide they take precedence over previously executed advance directives. Seeid. § 3101.4(B); Five Wishes ® at 5.
¶ 3 Unlike Oklahoma's statutory form, which limits the withholding or withdrawal of life-sustaining treatment to instances where the declarant has a terminal condition[3]
or is persistently unconscious,[4] Five Wishes ® allows an individual to decline life-sustaining treatment under the following scenarios: the individual (1) is close to death; (2) is in a coma and not expected to wake up or recover; (3) has permanent and severe brain damage; and (4) is in another condition specified by the individual. Five Wishes ® at 7.
Similar to the statutory advance directive form, Five Wishes ® at page 6 defines "life-sustaining treatment" as including "food and water supplied by medical device." However, unlike the statutory advance directive form, if an individual declines life-sustaining treatment in the Five Wishes ® document he or she is also declining artificially administered hydration and artificially administered nutrition unless the individual affirmatively limits the meaning of life-sustaining treatment, in writing, in the space provided in Five Wishes®. See id.; 63O.S. Supp. 2005, § 3101.4[63-3101.4](B).
 I. A Properly Completed, Executed, and Witnessed Five Wishes® Form Gives an Attending Physician Knowledge That the Patient, When Competent, Gave Informed Consent to the Withholding or Withdrawal of Artificially Administered Hydration and Artificially Administered Nutrition.
¶ 4 To answer your first question about the Five Wishes ® advance directive we must examine the Oklahoma Hydration and Nutrition for Incompetent Patients Act ("Act"), 63 O.S. 2001, §§3080.1-3080.5. This Act provides, "It shall be presumed that every incompetent patient has directed his health care providers to provide him with hydration and nutrition to a degree that is sufficient to sustain life." 63 O.S. 2001, § 3080.3[63-3080.3]. This presumption does not apply if:
 1. the attending physician of the incompetent patient knows, or a court finds, by clear and convincing evidence that the patient, when competent decided on the basis of information sufficient to constitute informed consent that artificially administered hydration or artificially administered nutrition should be withheld or withdrawn from him. A directive executed pursuant to the Oklahoma Natural Death Act specifically authorizing the withholding or withdrawal of nutrition and/or hydration shall be deemed to satisfy the provisions of this paragraph. An advance directive for health care executed pursuant to the Oklahoma Rights of the Terminally Ill or Persistently Unconscious Act specifically authorizing the withholding or withdrawal of nutrition and/or hydration shall be deemed to satisfy the provisions of this paragraph[.]
Id. § 3080.4(A) (emphasis added).
¶ 5 Under the "last antecedent" rule of statutory construction, the term "clear and convincing" used in the above-quoted Section 3080.4(A)(1) imposes a limitation on what "a court finds," not
what an "attending physician of the incompetent patient knows."See Bd. of Tr. v. Templeton, 86 P.2d 1000, 1003-04 (Okla. 1939) (citation omitted) (holding that "relative and qualifying words, phrases, and clauses are to be applied to the words or phrases immediately preceding, and are not to be construed as extending to or including others more remote" unless consideration of the entire act clearly requires otherwise). Considering the entirety of Section 3080.4(A)(1), there is no indication that "clear and convincing" describes anything other than what "a court finds."
¶ 6 Consequently, the above-quoted Section 3080.4(A)(1) sets forth two circumstances in which there is no presumption that an incompetent patient has directed his or her health care providers to provide him or her with artificially administered hydration and artificially administered nutrition: (1) when a patient's attending physician knows the patient, while competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition; or (2) a court finds, by clear andconvincing evidence, the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition.See id.
¶ 7 You first ask if a properly completed, executed, and witnessed Five Wishes ® advance directive gives an attendingphysician knowledge the patient, when competent, gave informedconsent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. A person who has executed Five Wishes ® is presumed to have beencompetent at the time of execution. Goodner v. Lindley,721 P.2d 801, 802 (Okla. 1986) ("The law presumes everyone is competent."). An attending physician presented with a properly executed Five Wishes ® can therefore presume the patient was competent when the Five Wishes ® was executed.[5]
¶ 8 Absent provisions to the contrary, a person who has properly completed and executed Five Wishes ® is also presumed to have given informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. The doctrine of informed consent arises out of the premise of Anglo-American law that each man is considered to be his own master. Scott v. Bradford,606 P.2d 554, 556 (Okla. 1979). The informed consent doctrine "does not permit a physician to substitute his judgment for that of the patient." Id. "It is the prerogative of every patient to chart his own course and determine which direction he will take." Id.
at 557. "The doctrine imposes a duty on a physician or surgeon to inform a patient of his options and their attendant risks." Id.
at 557. However, "[t]here is no need to disclose risks that either ought to be known by everyone or [which] are already known to the patient."Id. at 558.
¶ 9 The risk of death from withholding or withdrawing artificially administered hydration and artificially administered nutrition, when food and water can no longer be taken by mouth, is a risk that ought to be known to everyone and is therefore presumed to be known by the patient. Consequently, a physician presented with a properly completed, executed, and witnessedFive Wishes ® can presume the patient was competent, knew of the attendant risks of foregoing artificially administered hydration and artificially administered nutrition, and made an informed decision, constituting informed consent, to forego such life-sustaining treatment.[6] In other words, such FiveWishes ® gives an attending physician knowledge that thepatient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition.[7] This would therefore overcome the legal presumption that the incompetent patient has directed his or her physician to provide him or her with artificially administered hydration and artificially administered nutrition.
 II. Answering Whether a Properly Completed, Executed, and Witnessed Five Wishes ® Form Constitutes Clear and Convincing Evidence of Informed Consent That Artificially Administered Hydration and Artificially Administered Nutrition Should be Withheld or Withdrawn is Unnecessary In Light of Our Answer to Your First Question; Moreover, Such Question is a Fact Question Beyond the Scope of An Attorney General Opinion.
¶ 10 As we previously discussed, circumstances in which there is no presumption that an incompetent patient has directed his or her health care providers to provide him or her with artificially administered hydration and artificially administered nutrition include: (1) when a patient's attending physician knows the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition; or (2) when a court finds, by clear and convincing evidence, that the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. See 63 O.S. 2001, § 3080.4[63-3080.4] (A)(1).
¶ 11 In answering your first question we said a properly completed, executed, and witnessed Five Wishes ® advance directive overcomes the presumption that a patient desires artificially administered hydration and artificially administered nutrition because such Five Wishes ® gives an attending physician knowledge that the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. Because Five Wishes ® gives the attending physician such knowledge there would be no need to initiate a court proceeding to obtain a finding of fact, proven by clear and convincing evidence, that the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. Consequently, our answer to your first question, that Five Wishes ® gives a physician knowledge of a patient's wishes about artificially administered hydration and artificially administered nutrition, makes answering your second question unnecessary. Moreover, whether a properly completed, executed, and witnessed FiveWishes ® advance directive constitutes clear and convincing evidence of a patient's wishes concerning artificially administered hydration and artificially administered nutrition is a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 III. Determining if the Five Wishes ® Form is in "Substantially" the Form of the Oklahoma Advance Directive for Health Care is Unnecessary In Light of Our Answer to Your First Question; Moreover, Such Question is a Fact Question Beyond the Scope of an Attorney General Opinion.
¶ 12 Your third question, asking if Five Wishes ® is in "substantially" the form of Oklahoma's statutory advance directive form set forth at 63 O.S. Supp. 2005, § 3101.4[63-3101.4] (B), arises from the language of the Act that provides "[a]n advance directive shall be in substantially the following form" and then proceeds to set forth the form for Oklahoma's advance directive for health care. 63 O.S. Supp. 2005, § 3101.4 (B) (emphasis added). If an advance directive is in substantially the statutory form and specifically authorizes the withholding or withdrawal of artificially administered hydration and artificially administered nutrition, Section 3080.4(A)(1) provides it shall satisfy the two circumstances set forth therein which overcome the presumption that a patient desires artificially administered hydration and artificially administered nutrition. In other words, an advance directive in substantially the statutory form (1) gives an attending physician knowledge that the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition, and (2) constitutes clear and convincing evidence sufficient to support a court's finding that the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. See id.
¶ 13 However, we need not answer whether Five Wishes ® is in substantially the statutory advance directive form. This question is rendered unnecessary because we have already found that a properly completed, executed, and witnessed Five Wishes ®, whether substantially the same as the statutory form or not, gives an attending physician knowledge that a patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. Moreover, whether a properly completed, executed, and witnessed Five Wishes ® advance directive is in substantially the form of Oklahoma's advance directive for health care is a question of fact beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
 IV. The Oklahoma Rights of the Terminally Ill or Persistently Unconscious Act is Unconstitutional to the Extent it Limits an Individual's Right to Refuse Artificially Administered Hydration and Artificially Administered Nutrition In Advance of Incapacity.
¶ 14 The Oklahoma Rights of the Terminally Ill or Persistently Unconscious Act ("Terminally Ill or Persistently Unconscious Act"), 63 O.S. 2001 Supp. 2005, §§ 3101.1-3102A, allows that "[a] qualified patient may make decisions regarding life-sustaining treatment as long as the patient is able to do so." 63 O.S. 2001, § 3101.8[63-3101.8](A). A "qualified patient" is defined as "a patient eighteen (18) years of age or older who has executed an advance directive and who has been determined to be in a terminal condition or in a persistently unconscious state by the attending physician and another physician who have examined the patient[.]" Id. § 3101.3(10). The Terminally Ill or Persistently Unconscious Act, therefore, allows a patient to make life-sustaining treatment decisions, including the withholding or withdrawal of artificially administered hydration and artificially administered nutrition, only where the patient (1) has been determined to have a terminal condition, or (2) is persistently unconscious. Id.
¶ 15 The Terminally Ill or Persistently Unconscious Act does not permit an individual to decide in advance of acquiring, for example, Alzheimer's Disease that he or she does not wish to receive artificially administered hydration and artificially administered nutrition should he or she no longer be able to take food or water by mouth. This is because a diagnosis of Alzheimer's Disease is not necessarily a "terminal condition" and a person with Alzheimer's Disease is not necessarily "persistently unconscious," as those terms are defined in the Terminally Ill or Persistently Unconscious Act.
¶ 16 Alzheimer's Disease is an incurable, progressive disorder which can cause "cognitive and functional impairments that predispose the patient to behavioral symptoms, destroy intellectual capacity and personality, erase the ability to communicate one's wishes for care, and lead to life-threatening consequences." A. Hurley, RN, DNSc, L. Volicer, MD, PhD, It'sOkay, Mama, If You Want to Go, It's Okay, 288 J. of Am. Med. Ass'n 2324 (2002).
¶ 17 Medical journals have reported placement of feeding tubes in patients with Alzheimer's Disease because they had insufficient oral intake of hydration and nutrition who survived four years with the placement of the feeding tube. See, e.g.,id. Because patients with Alzheimer's Disease do not necessarily have "an incurable and irreversible condition that, even with the administration of life-sustaining treatment [tube-feeding], will, in the opinion of the attending physician and another physician, result in death within six (6) months," they do not qualify as having a "terminal condition" pursuant to 63 O.S. 2001, §3101.3[63-3101.3] (12). Also, although patients with Alzheimer's Disease may have diminished cognitive function, "thought and awareness of self and environment" are not necessarily absent, so they are not "persistently unconscious" pursuant to Section 3101.3(7).
¶ 18 You last ask whether the Terminally Ill or Persistently Unconscious Act, which limits an individual's right to authorize the withholding or withdrawal of artificially administered hydration and artificially administered nutrition in advance of incapacity to instances where there is a terminal condition or persistent unconsciousness, is constitutional.
¶ 19 In 1990, the United States Supreme Court first recognized a competent individual's constitutionally protected right to refuse artificially administered hydration and artificially administered nutrition. Cruzan v. Director, Missouri Departmentof Health, 497 U.S. 261 (1990), stated:
 This is the first case in which we have been squarely presented with the issue whether the United States Constitution grants what is in common parlance referred to as a "right to die."
 . . . .
 [F]or purposes of this case, we assume that the United States Constitution would grant a competent person a constitutionally protected right to refuse lifesaving hydration and nutrition.
Id. at 277, 279. As Justice O'Connor expressed in her concurring opinion in Cruzan, "the liberty guaranteed by the Due Process Clause must protect, if it protects anything, an individual's deeply personal decision to reject medical treatment, including the artificial delivery of food and water."Id. at 289.
¶ 20 In Cruzan, Nancy Beth Cruzan's parents sought a court order to remove her gastrostomy feeding and hydration tube after four years because Nancy had virtually no chance of regaining her mental faculties. Id. at 265. The trial court granted the Cruzans' request but the State of Missouri appealed the trial court's order. Id. at 268. On appeal, the Missouri Supreme Court reversed the trial court's decision granting the Cruzans' request, concluding, "no person can assume [the choice of terminating medical treatment] for an incompetent in the absence of the formalities required under Missouri's Living Will statutes or the clear and convincing, inherently reliable evidence absent here." Id. at 269 (quoting Cruzan v. Harmon, 760 S.W.2d 408,425 (Mo. 1988)). The Missouri Supreme Court said that the only evidence present, Nancy's "expressed thoughts at age twenty-five in somewhat serious conversation with a housemate friend that if sick or injured she would not wish to continue her life unless she could live at least halfway normally," did not constitute clear and convincing evidence necessary to overcome Missouri's strong policy favoring the preservation of life. Id. at 267 (citations omitted).
¶ 21 Nancy's parents petitioned the United States Supreme Court for review of the Missouri Supreme Court's decision. The United States Supreme Court held the Constitution did not forbid Missouri from requiring clear and convincing evidence of Nancy's wishes. The Court observed that the statements made by Nancy, introduced at trial in support of her parents' request to withdraw artificially administered hydration and artificially administered nutrition from their daughter, simply addressed Nancy's desire not to face life as a "vegetable" and did not specifically "deal in terms with withdrawal of medical treatment or of hydration and nutrition." Id. at 285. The Court therefore concluded that if Nancy had made clear statements when she was competent concerning her desire not to receive artificially administered hydration and artificially administered nutrition while in a persistent vegetative state, such evidence would constitute clear and convincing evidence and Nancy's liberty interest in self-determination would be honored. Id.
¶ 22 Since the Supreme Court's decision in Cruzan, other courts have held individuals have a constitutionally protected right to refuse life-sustaining treatment, including artificially administered hydration and artificially administered nutrition, pursuant to the Fourteenth Amendment Due Process Clause. See,e.g., Blouin v. Spitzer, 356 F.3d 348, 359 (2nd Cir. 2004); Inre Tavel, 661 A.2d 1061, 1069-70 (Del. 1995). Moreover, the courts have held when a person has clearly expressed his or her prior intentions about a course of treatment in the event of incompetency those intentions should be respected. Id.
¶ 23 Although the Oklahoma Supreme Court has not been asked to decide the issue, the Court would likely find individuals have a constitutionally protected right to refuse artificially administered hydration and artificially administered nutrition. An individual's right to refuse artificially administered hydration and artificially administered nutrition is also protected by Oklahoma's Due Process Clause, Okla. Const. art. II, § 7, which contains language identical to that found in theFourteenth Amendment Due Process Clause of the federal Constitution. Compare Okla. Ass'n For Equitable Taxation v. Cityof Oklahoma City, 901 P.2d 800, 805 (Okla. 1995) ("Due process protections encompassed within the Okla. Const. art. 2, § 7 are coextensive with those of its federal counterpart."). Id.
(footnote omitted). If a person has clearly expressed his or her intentions to withhold or withdraw artificially administered hydration and artificially administered nutrition in advance of incapacity, those wishes would be honored under the conditions specified by the individual — not limited to a terminal condition or persistent unconsciousness.
¶ 24 In Attorney General Opinion 91-2, the Attorney General addressed the right of a competent individual, in advance of incapacity, to designate another to act on the incompetent's behalf to refuse artificially administered hydration and artificially administered nutrition, and to designate another to act on the incompetent's behalf to refuse artificially administered hydration and artificially administered nutrition under the now-repealed Oklahoma Natural Death Act, 63 O.S. §§3101-3111 (repealed by 1992 Okla. Sess. Laws ch. 114, § 20, eff. Sept. 1, 1992). The Attorney General said an individual could direct life-sustaining treatment, including artificially administered hydration and artificially administered nutrition, to be withheld or withdrawn only if the individual was diagnosed with a terminal condition because the Oklahoma Natural Death Act provided the exclusive means by which individuals could request they be denied life-sustaining treatment. Id. at 15-16. Although the Attorney General noted the United States Supreme Court's decision in Cruzan, he did not discuss the constitutional implications of the case on Oklahoma's limitation on an individual's right to refuse artificially administered hydration and artificially administered nutrition in advance of incompetency. Id. at 14. To the extent the views of the Attorney General in that Opinion are contrary to the views expressed here, Attorney General Opinion 91-2 is withdrawn.
¶ 25 We conclude that the Terminally Ill or Persistently Unconscious Act, 63 O.S. 2001 and Supp. 2005, §§ 3101.1-3102A, is unconstitutional to the extent it limits an individual's right to refuse artificially administered hydration and artificially administered nutrition in advance of incapacity. This conclusion does not affect the validity of advance directives executed before or after the issuance of this Opinion.
 ¶ 26 It is, therefore, the official Opinion of the Attorney General that:
 1. A physician presented with a properly completed, executed, and witnessed Five Wishes ® advance directive form can presume the patient was competent, knew of the attendant risks of foregoing artificially administered hydration and artificially administered nutrition, and made an informed decision, constituting informed consent, to forego such life-sustaining treatment. Such Five Wishes ® gives an attending physician knowledge that the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition pursuant to the Hydration and Nutrition for Incompetent Patients Act, 63 O.S. 2001, §§ 3080.1-3080.5. Such Five Wishes ® directive would be as compelling to medical providers as a statutory advance directive or a competent person's verbal declarations.
 2. Because a properly completed, executed, and witnessed Five Wishes ® advance directive gives the attending physician knowledge that a patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition there would be no need to initiate a court proceeding to obtain a finding of fact, proven by clear and convincing evidence, that the patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. Consequently, our answer to your first question about Five Wishes ® makes answering your second question, whether Five Wishes ® constitutes" clear and convincing evidence" of a patient's wishes, unnecessary. Moreover, your second question is a question of fact which is beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b] (A)(5).
 3. We need not answer whether Five Wishes ® is in substantially the form of the Oklahoma Advance Directive for Health Care, and therefore gives an attending physician knowledge and supports a court's finding that a patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. Answering this question is unnecessary because we have already found, in answering your first question, that a properly completed, executed, and witnessed Five Wishes ® form, without regard to its similarities to Oklahoma's Advance Directive for Health Care, gives an attending physician knowledge whether a patient, when competent, gave informed consent to the withholding or withdrawal of artificially administered hydration and artificially administered nutrition. Moreover, whether Five Wishes ® is in substantially the form of Oklahoma's Advance Directive for Health Care is a question of fact which is beyond the scope of an Attorney General Opinion. 74 O.S. 2001, § 18b[74-18b] (A)(5).
 4. An individual has a constitutionally protected right, under both the Fourteenth Amendment Due Process Clause of the federal Constitution and Okla. Const. art. II, § 7, to refuse artificially administered hydration and artificially administered nutrition in advance of incapacity. If a person has clearly expressed his or her intentions to withhold or withdraw artificially administered hydration and nutrition in advance of incapacity, those wishes must be honored under the conditions specified by the individual — not limited to a terminal condition or persistent unconsciousness. To the extent the views in Attorney General Opinion 91-2 are contrary to the views expressed here it is withdrawn.
 5. The Oklahoma Rights of the Terminally Ill or Persistently Unconscious Act, 63 O.S. 2001 Supp. 2005, §§ 3101.1 -3102A, is unconstitutional to the extent it limits an individual's right to refuse artificially administered hydration and artificially administered nutrition in advance of incapacity to instances in which an individual has a terminal condition or is persistently unconscious. The conclusion reached here does not affect the validity of an advance directive executed before or after the issuance of this Opinion.
W.A. DREW EDMONDSON Attorney General of Oklahoma
JANIS W. PRESLAR Assistant Attorney General
[1] Available at www.agingwithdignity.org. The form cannot be reproduced or transmitted without written permission from Aging with Dignity.
[2] "`Life-sustaining treatment' means any medical procedure or intervention, including but not limited to the artificial administration of nutrition and hydration if the declarant has specifically authorized the withholding and withdrawal of artificially administered nutrition and hydration, that, when administered to a qualified patient, will serve only to prolong the process of dying or to maintain the patient in a condition of persistent unconsciousness." 63 O.S. 2001, § 3101.3[63-3101.3](6).
[3] "`Terminal condition' means an incurable and irreversible condition that, even with the administration of life-sustaining treatment, will, in the opinion of the attending physician and another physician, result in death within six (6) months." Id.
§ 3101.3(12).
[4] "`Persistently unconscious" means an irreversible condition, as determined by the attending physician and another physician, in which thought and awareness of self and environment are absent[.]" Id. § 3101.3(7). Oklahoma's statutory form advance directive allows an individual to make his or her wishes known by answering four separate questions concerning (1) life-sustaining treatment if the individual has a terminal condition, (2) life-sustaining treatment if the individual is persistently unconscious, (3) artificial administration of hydration and nutrition if the individual has a terminal condition, and (4) artificial administration of hydration and nutrition if the individual is persistently unconscious. See63 O.S. Supp. 2005, § 3101.4[63-3101.4](B).
[5] Competence of a patient would be drawn into question if the patient's attending physician was presented with a court order determining the patient's incompetence which was in place at the time the patient executed Five Wishes®. See, e.g., In reK.K.B., 609 P.2d 747, 751 (Okla. 1980) (finding that "[a]bsent a guardianship proceeding a patient is presumed competent").
[6] While the question posed pertains to artificially administered hydration and artificially administered nutrition, the same analysis and result would apply to other medical decisions, e.g. organ donation, memorialized in the FiveWishes® document.
[7] Such Five Wishes® directive would be as compelling to medical providers as a statutory advance directive or a competent person's verbal declarations.