## CLINTON et al. v. MILLER.

No. 9649—Opinion Filed Sept. 30, 1919.

Rehearing Denied Jan. 20, 1920.

(Syllabus by the Court.)

### 1. Cancellation of Instruments—Evidence—Sufficiency.

In an action to cancel a deed, evidence held to show, as claimed by the plaintiffs, that the confidential relation of physician and patient existed between the parties: that the value of the property conveyed by the deed was far in excess of the amount for which it was sold, and that the consideration was wholly inadequate.

### 2. Same — Confidential Relations — Burden of Proof.

Transactions between persons occupying confidential relations with each other in which the stronger or superior party obtains an advantage over the other cannot be upheld. In such transactions the burden of proof is cast on the superior party to establish the perfect fairness of the transaction and that the consideration was adequate.

### 3. Appeal and Error—Evidence—Review.

In an equitable action, the judgment of the trial court will not be set aside unless it is clearly against the weight of the evidence.

Error from District Court, Creek County; Ernest B. Hughes, Judge.

Action by Ambrose Miller and another against Fred S. Clinton and others to cancel a deed. From judgment for plaintiffs the defendants bring error. Affirmed.

J. P. O'Meara, Chas. E. Bush, and A. F. Moss, for plaintiffs in error.

W. H. Kornegay and C. N. Simon, for defendants in error.

RAINEY, J. This is an action instituted by Ambrose Miller and his wife, Alice Miller, against Dr. Fred S. Clinton, J. H. Clinton, Paul Clinton, and the Sapulpa Refining Company, to cancel a deed executed by the plaintiffs to the defendant Fred S. Clinton to an undivided one-fourth interest in the allotment of the plaintiff, Ambrose Miller. In this case it was alleged that a conspiracy existed between Fred S. Clinton and Paul Clinton to obtain plaintiff's land without an adequate consideration; that plaintiff's mind had become impaired by the excessive use of intoxicating liquors and that he was under the influence of intoxicating liquors at the time of the execution of the deed; that he did not understand the nature of the transaction and the consequences of his acts; that the confidential relation of physician and patient

existed between Dr. Fred S. Clinton and Ambrose Miller and members of his family, and that there was no consideration for the execution of said deed. The defendants denied generally and specially the allegations of plaintiffs' petition. The case was tried without a jury, and at the conclusion of the trial the court rendered judgment for the plaintiffs. The court did not make any findings of fact and conclusions of law in the manner provided by the Code, though in rendering judgment he gave his reasons therefor. This being a case of purely equitable cognizance, it is our duty to weigh the evidence, and, unless the judgment of the trial court is clearly against the weight of the same, it must be sustained. Schock v. Fish, 45 Okla. 12, 144 Pac. 584; Crump v. Lanham, 67 Oklahoma, 168 Pac. 43. All the allegations in plaintiffs' petition are not supported by the clear weight of the evidence, but the finding is general, and the weight of the evidence clearly shows that the confidential relation of physician and patient existed between Dr. Fred S. Clinton and Ambrose Miller and members of his family at and during the time of the transactions resulting in the execution of the deed. Moreover, they were close personal friends, and Miller appears from the evidence to have placed implicit confidence in Clinton.

An examination of the evidence further discloses that on November 7, 1914, Dr. Clinton secured from Ambrose Miller a contract for an undivided one-fourth interest in Miller's allotment. This contract recited a consideration of $15,000; $1 paid in cash and $14,999 to be paid out of the one-half of one-fourth of the royalties which were to be paid to Dr. Clinton by virtue of a pipe line order, to be given by Ambrose Miller to the company purchasing the oil. It was specifically provided that said $14,999 was to be payable only out of said royalties after the oil was produced, run, and sold. On November 10th, thereafter, Dr. Clinton secured from Miller and his wife a deed to an undivided one-fourth interest in Miller's allotment. The deed recited a consideration of $15,000, but the evidence shows that the true consideration was $10,000, to be paid out of one-half of the royalties on oil assigned to Clinton, as the oil was produced, run, and sold, and not otherwise. This consideration was evidenced by a written agreement entered into by and between the parties at the time of the execution of the deed. Prior to this time Miller had entered into a written agreement with O. R. Howard to convey to the said Howard an undivided one-half interest in his allot-

ment, free and clear of all liens. It developed that Miller was unable to convey this interest to Howard free and clear of all liens, for the reason that he had theretofore executed an option to J. D. Kimmel for an undivided one-half interest, and had also given an assignment of one-twelfth the royalties to a Dr. Phelps. Dr. Clinton was assisting Miller in putting his title in condition to convey the interest to Howard. About this time Miller entered into negotiations with Mr. Kimmel for the purpose of having him release his option, which resulted in Miller and Kimmel entering into an agreement by which Kimmel released his option to purchase an undivided one-half interest in and to the land upon Miller executing to him a deed for an undivided one-fourth interest in the land, and paying a consideration of $1,000 cash. Miller was also to receive $12,500 out of the royalties, which were to be paid to Kimmel. It appears that Dr. Clinton secured and paid the $1,000 for Miller, put that Miller subsequently repaid him at least $333.34, and possibly $666.66. The total value of the land at the time, as shown by the evidence, was somewhere between $20,000 and $30,000, and since Dr. Clinton was to be at no expense in developing the property (the same being operated by C. B. Schaeffer under a lease duly assigned to him), and since the consideration paid in addition to the $666.66 was to be paid only out of this royalty, it appears that the one-fourth interest was worth not less than $5,000 or $6,000. The amount actually paid was, therefore, grossly disproportionate to the true value of the land. In addition to this it conclusively appears to us that the deed was executed pursuant to the agreement of November 7th, the only consideration for which was $1, which certainly is unconscionable, considering the value of the interest conveyed. While ordinarily a deed will not be cancelled for inadequacy of consideration alone, it will be cancelled where a confidential relation exists, and the evidence shows, as it does in this case, that an advantage was taken. In 21 Ruling Case Law, relative to transactions between physician and patient, the author of the text, at page 372, says:

"An incident of the relation of physician and patient which may be called a non-professional incident is the position of advantage in which the physician is placed with respect to all dealings between himself and the patient. A person in ill health is more subject to the domination and undue influence of another than a person of sound body and mind. The physician naturally is in a position of trust and confidence as regards the patient and his opportunities to influence the patient are unusual. Hence all transactions between physician and patient are closely scrutinized by the courts, which must be assured of the fairness of those dealings."

It has been held that a gift from a patient to his physician, although not bad per se, is under the suspicion that attaches in circumstances where a gift is made to a person in a confidential relation to the giver. Woodbury v. Woodbury, 141 Mass. 329, 5 N. E. 275, 55 Am. Rep. 479. And the burden is on a physician to show the bona fides of the transactions. Zeigler v. Illinois Trust Co., 245 Ill. 180, 91 N. E. 1041, 28 L. R. A. (N. S.) 1112.

The authorities uniformly hold that transactions between persons occupying fiduciary and confidential relations to each other in which the stronger or superior party obtains advantage over the other should not be upheld, and that in actions involving validity of such transactions the burden of proof is cast on the superior party to establish the perfect fairness of the transaction and that the consideration was adequate. Daniel v. Tolon, 53 Okla. 666, 157 Pac. 756; Watts v. Jackson, 75 Oklahoma, 182 Pac. 508; Peterson et al. v. Budge et al., (Utah), 102 Pac. 211; Elliott on Contracts, p. 272; Henson v. Cooksey, 86 N. E. 1107; Viallet v. Construction R. & Power Co., 30 Utah, 260, 84 Pac. 496.

In consideration of the above matters we cannot say that the judgment of the trial court is clearly against the weight of the evidence, and the judgment is, therefore, affirmed.

OWEN, C. J., and SHARP, KANE, JOHNSON, and HIGGINS, JJ., concur.