2009 OK CIV APP 19

**Bob O. PARRIS, Plaintiff/Appellant,**

v.

**Barney LIMES, M.D., James Brinkworth, M.D., Shelby D. Barnes, M.D., Urology Associates, Inc., and Saint Anthony Hospital, tradename for SSM Healthcare of Oklahoma, Inc., Defendants/Appellees.**

**No. 104979.**

Court of Civil Appeals of Oklahoma, Division No. 4.

Jan. 29, 2009.

Bob O. Parris, Oklahoma City, Oklahoma, Plaintiff/Appellant pro se.

Beverly S. Pearson, Jon M. Williford, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma, for Defendant/Appellee Barney Limes, M.D.

Hilton H. Walters, R. Gene Stanley, Rife & Walters, LLP, Oklahoma City, Oklahoma, for Defendant/Appellee James Brinkworth, M.D.

Russell L. Hendrickson, Victoria D. Tindall, Pierce Couch Hendrickson, Baysinger & Green, LLP, Oklahoma City, Oklahoma, for Defendants/Appellees Shelby Barnes, M.D., and Urology Associates, Inc.

Alexander C. Vosler, Scott D. Raybern, Johnson, Hanan & Vosler, Oklahoma City, Oklahoma for Defendant/Appellee Saint Anthony Hospital.

DOUG GABBARD II, Presiding Judge.

¶1 Plaintiff/Appellant, Bob O. Parris, appeals dismissals granted in favor of Defendants/Appellees, Barney Limes, M.D., Saint Anthony Hospital (Hospital), Shelby Barnes, M.D., and Urology Associates, Inc.,[1] and a summary judgment granted in favor of Defendant/Appellee, James Brinkworth, M.D. We reverse and remand for further proceedings.

## BACKGROUND

¶2 In 1999, Plaintiff was being treated by Limes. On September 19, 1999, Limes advised Plaintiff that the prostate specific antigen (PSA) test he had undergone had come back positive, which was an indicator for prostate cancer. As a result, Limes recommended that Plaintiff have a biopsy of his

---

1. Barnes & Urology Associates are sometimes collectively referred to in this opinion as "Barnes."

prostate. Plaintiff agreed, and on October 6, Limes performed the biopsy at Hospital. The next day, Brinkworth, a pathologist, examined the biopsy specimens and reported that Plaintiff's prostate had adenocarcinoma, a form of cancer, and high grade prostatic intraepithelial neoplasia. After reviewing Brinkworth's report, Limes advised Plaintiff that he had "highly aggressive" Stage II prostate cancer and needed a radical prostatectomy (the complete removal of his prostate). Limes recommended that Plaintiff obtain a second opinion. The next day, based upon Limes' report, Barnes gave Plaintiff the same diagnosis and recommendation.

¶ 3 On October 15, 1999, Barnes performed a radical prostatectomy on Plaintiff at Hospital and removed his prostate. Plaintiff's total bill for the operation was approximately $32,000. After Plaintiff's recovery from surgery, Barnes continued to treat him for another five years and administered frequent PSA tests.

¶ 4 On September 2, 2004, Plaintiff obtained the medical records related to his 1999 prostatectomy for the first time. Those records contained a report dated October 26, 1999, from Dr. Stan Shrago, the surgical pathologist, to Barnes. In his report, Shrago advised Barnes that he had examined Plaintiff's removed prostate three days after the prostatectomy and found no sign of cancerous cells in the prostate. Shrago's report indicated that he had discussed his findings with Barnes on the day of his original examination and, again, on the day he issued his written report. According to Plaintiff, Barnes never advised him of Shrago's findings.

¶ 5 Eventually, Plaintiff and his wife, Carol, sued Defendants for malpractice. Plaintiff's amended petition alleged that Defendants were negligent in conducting the biopsy and examination which resulted in the diagnosis of cancer, that the pathology slides of the biopsy were in the exclusive custody of Limes, Brinkworth, and Hospital, and that these slides were "negligently mismarked, misidentified or misread which ordinarily does not occur in the absence of negligence." Plaintiff also alleged that Barnes and his group, Urology Associates, Inc., "were negligent in the performance of said surgery and breached the standard of care in failing to appropriately perform said surgery." The amended petition also alleged that Barnes and his group had intentionally concealed the information that Plaintiff's prostate was cancer-free, thereby preventing Plaintiff from discovering Defendants' negligence until September 2004.

¶ 6 Although Plaintiff was originally represented by counsel, his attorney withdrew in April 2007, and Plaintiff began representing himself *pro se*. During the course of the litigation, Plaintiff filed a motion requesting to proceed without a medical expert, citing the doctrine of *res ipsa loquitur* as authority. The trial court denied the motion and ordered Plaintiff to name an expert within 30 days. Plaintiff failed to do so, and Defendants (except Brinkworth) filed motions to dismiss pursuant to what is now 12 O.S. Supp.2008 § 683(5) for failure to comply with the court's order to provide them with the name of his medical expert. Plaintiff responded that an expert witness was not necessary to make a prima facie showing of Defendants' negligence, but, if it was, then Shrago would be his expert. Defendants obtained an affidavit from Shrago stating that he had not agreed to be Plaintiff's expert. Shrago's affidavit also stated that "[i]t is known and reported in the pathology literature that a needle biopsy will demonstrate cancer but a later surgical prostate specimen could show little or no signs of the malignancy." The trial court granted the motions to dismiss.

¶ 7 At about the same time, Brinkworth filed a motion for summary judgment on the ground that his interpretation of the biopsy specimen was correct, and that Plaintiff's failure to identify an expert witness "demonstrates [Plaintiff's] inability to prove the prima facie elements of negligence." The trial court granted Brinkworth's motion for summary judgment.

¶ 8 Plaintiff appeals.[2]

---

**2.** On October 22, 2007, the Supreme Court: (1) denied a motion to dismiss the appeal, noting

that the trial court's disposition affected all Defendants; (2) found that Carol Parris was not a

## STANDARD OF REVIEW

¶ 9 The granting of a motion to dismiss or a motion for summary judgment upon undisputed material facts presents an issue of law requiring *de novo* review, that is, a plenary, independent and non-deferential re-examination of the trial court's legal rulings. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.*, 1996 OK 125, n. 1, 932 P.2d 1100, 1103; *see also Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991).

## ANALYSIS

¶ 10 In his petition in error, Plaintiff raises the following errors: first, the trial court erred in finding that an expert witness was necessary for Plaintiff to prove malpractice; second, the trial court abused its discretion in dismissing Plaintiff's suit when he failed to name an expert witness; and, third, whether an expert may be compelled to testify on behalf of Plaintiff. We address these allegations within the context of the dismissal and summary judgment orders.

### 1. *The Orders of Dismissal*

¶ 11 As noted above, Defendants' motions to dismiss were based upon their argument that Plaintiff failed to comply with the trial court's order to provide them with the name of his medical expert. In granting the dismissals on this ground, the trial court abused its discretion.

¶ 12 First, Plaintiff substantially complied with the order when he named Shrago as his expert. The fact that Shrago did not desire to testify, and would not do so voluntarily, is not a valid basis for finding that Plaintiff failed to comply with the court's order. It is not unusual in malpractice cases for professionals in the field to be reluctant to testify against their peers. However, Shrago had relevant information, and witnesses, even those who are experts, with relevant informa-

tion may be compelled to testify despite their reluctance or refusal to do so. See 12 O.S. Supp.2008 § 2501; *see also Kaufman v. Edelstein*, 539 F.2d 811, 819–21 (2nd Cir.1976)(holding there is no constitutional, statutory, or common law privilege against the compulsion of expert testimony, and finding no sufficient basis to recognize a general privilege for withholding expert knowledge from the court or the public). Oklahoma does not recognize an evidentiary privilege from testifying solely because a person is an "expert." Moreover, for purposes of Shrago's trial testimony, Plaintiff has obviously waived the physician-patient privilege recognized by 12 O.S. Supp.2008 § 2503. Plaintiff substantially complied with the court's order.

¶ 13 Second, although there is no evidence that Shrago will testify that the Defendants deviated from the accepted standard of care, expert testimony on this issue is not always required to establish a prima facie case of professional negligence, as we discuss below. Since the trial court had not yet had the opportunity to examine the evidence, its order and dismissals were clearly premature, and an abuse of discretion, and must be reversed.

### 2. *The Summary Judgment in favor of Brinkworth*

¶ 14 Generally, expert testimony that a defendant doctor deviated from the standard of care is necessary to establish causation in professional liability cases. *White v. Burton*, 1937 OK 381, 71 P.2d 694; *Harder v. F.C. Clinton, Inc.*, 1997 OK 137, 948 P.2d 298. The rationale for this rule is that a trier of fact must have sufficient technical and scientific evidence at his or her disposal to answer a scientific or technical question of fact. However, when a physician's lack of care has been such that common knowledge or the experience of laymen is extensive enough to recognize or infer negligence from the facts, expert medical testimo-

party appellant because she did not sign the petition in error and could not be represented by her husband, a non-attorney; and (3) deferred to this court Defendants' request that the appeal be dismissed for failure to file a record. In that regard, since Plaintiff has substantially complied with a deadline for filing the appellate record, we

deny Defendants' request to dismiss the appeal. However, we grant Defendants' motions to strike Plaintiff's replies to their responses to his petition in error, since such pleadings are not authorized by the accelerated procedure for summary judgment set out in Supreme Court Rule 1.36.

ny is not required. *Boxberger v. Martin,* 1976 OK 78, ¶ 14, 552 P.2d 370, 373.[3] Expert medical evidence is not required to establish the cause of an objective injury where there is competent evidence, without such testimony, to establish the cause with reasonable certainty. In *Barnett v. Richardson,* 1966 OK 101, ¶ 4, 415 P.2d 987, 990, the Supreme Court stated:

> Where an injury is patent, objective rather than subjective, the plaintiff is competent to testify as to the injury, the treatment received therefor, and the reaction of such treatment, and this testimony is sufficient for the jury to render a verdict ... and no expert medical testimony is necessary.

 ¶ 15 This is a common law rule usually referred to as the doctrine of *res ipsa loquitur.* The term is a Latin phrase meaning "the thing speaks for itself" and refers to a rule of evidence in which the negligence of a defendant may be inferred from the mere fact that an accident happened. *Lawton Coca–Cola Bottling Co. v. Shaughnessy,* 1949 OK 149, ¶ 0, 216 P.2d 579 (syllabus of the court # 1). The doctrine is designed to aid plaintiffs in making a prima facie case of negligence in circumstances where direct proof is beyond the power of the plaintiff, but within the power of the defendant. For this reason, the doctrine only applies: (1) in the absence of the plaintiff having offered direct evidence of negligence, (2) where the injury was caused by something within the exclusive control of the defendant, and (3) where the event causing the injury was of a kind which ordinarily does not occur in the absence of negligence on the part of someone in defendant's situation. *Indep. E. Torpedo Co. v. Gage,* 1951 OK 320, 240 P.2d 1119.[4]

 ¶ 16 The Oklahoma Legislature codified the common law doctrine, as least as it applies to medical malpractice cases, in 1976. Title 76 O.S.2001 § 21 provides:

**3.** As *Boxberger* explains, even when expert medical testimony is necessary to establish the proper standard of care a physician should have followed, the trier of fact may consider all the evidence in determining whether the physician met the requisite standard. Causal connection may be proved by circumstantial evidence if the evidence has sufficient probative force to constitute the basis for a legal inference, rather than

In any action arising from negligence in the rendering of medical care, a presumption of negligence shall arise if the following foundation facts are first established:

1. The plaintiff sustained any injury;

2. Said injury was proximately caused by an instrumentality solely within the control of the defendant or defendants; and

3. Such injury does not ordinarily occur under the circumstances absent negligence on the part of the defendant.

If any such fact, in the discretion of the court, requires a degree of knowledge or skill not possessed by the average person, then in that event such fact must be established by expert testimony.

The Oklahoma statute slightly alters the common law rule. Instead of applying an *inference* of negligence as the common law rule did, the statute establishes a *presumption* thereof. *Sisson By and Through Allen v. Elkins,* 1990 OK 123, ¶ 7, 801 P.2d 722, 724. It also differs from the common law rule by not incorporating the element that the plaintiff must not be in a position to show the particular circumstances which caused the injury. *Id.* In determining whether the doctrine applies in a given medical malpractice case, only the three numbered foundational requirements need be met. *Middlebrook v. Imler, Tenny & Kugler, M.D.'s, Inc.,* 1985 OK 66, ¶ 7, 713 P.2d 572, 578.

 ¶ 17 Applying the doctrine to the present case, we conclude that sufficient facts existed to establish a prima facie case of negligence, and to overcome Brinkworth's motion for summary judgment. These facts include:

1. Plaintiff was injured when his healthy prostate was unnecessarily removed as a result of a biopsy indicating the presence of cancer.

mere speculation. In other words, the circumstances proved must lead to the conclusion with reasonable certainty and probability.

**4.** This common law doctrine was first applied to Oklahoma medical malpractice cases in *St. John's Hospital & School of Nursing v. Chapman,* 1967 OK 126, 434 P.2d 160.

2. Plaintiff's healthy prostate was removed as a direct result of Limes' biopsy, Hospital's custody of the samples, and Brinkworth's examination and report, and was within the exclusive control of these Defendants.

3. Common knowledge and the experience of laymen is extensive enough to recognize that the unnecessary removal of a healthy prostate, under such circumstances, does not ordinarily occur absent negligence.[5]

Accordingly, the trial court erred in granting summary judgment to Defendant Brinkworth.[6]

## CONCLUSION

¶ 18 For all these reasons, the dismissals and summary judgment in favor of Defendants are reversed and remanded for further proceedings.

¶ 19 REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

BARNES, J., concurs, and RAPP, C.J., dissents.

5. Although Shrago's affidavit states that there is medical literature that needle biopsies sometimes show cancer when a later surgical prostate specimen shows none, Shrago's statement does not exclude negligence. In fact, medical literature suggests that conflicting results between biopsies and post-surgical examinations probably result from the failure to sample all biopsy tissue, the mislabeling and switching of biopsy samples, informational error, or other causes suggesting a deviation from the accepted standard of care. *See, for example*, Trpkov, Kiril, et al., "No Residual Cancer on Radical Prostatectomy After Positive 10–Core Biopsy: Incidence, Biopsy Findings, and DNA Specimen Identity Analysis," Archives of Pathology & Laboratory Medicine, June 2006; 130:811–816 (available at http://findarticles.com/p/articles/mi_qa3725/is_200606/ai_n17189011).

6. Because the trial court granted Limes, Barnes, and Hospital's motions to dismiss, the issue of whether expert testimony is necessary to raise a disputed fact concerning standard of care as to those Defendants is not directly before us. However, to assist the trial court on remand, we note that Limes and Hospital were also involved in the original biopsy procedure and examination, and we would reach a similar conclusion regarding those Defendants. In contrast, Barnes merely relied upon the original biopsy report and expert testimony would be necessary to demonstrate that he violated the standard of care in performing the prostatectomy. However, we reach no conclusion as to whether expert testimony will be necessary to establish Plaintiff's allegation that Barnes committed malpractice in his post-surgical treatment and allegedly intentional concealment of Shrago's report showing that Plaintiff never had cancer.