2012 OK 18

**Bob O. PARRIS, Plaintiff/Appellant,**

v.

**Barney LIMES, M.D., Shelby D. Barnes, M.D., Urology Associates, Inc., and Saint Anthony Hospital, tradename for SSM Healthcare of Oklahoma, Inc., Defendants/Appellees,**

and

**James Brinkworth, M.D., Defendant.**

No. 107,979.

Supreme Court of Oklahoma.

March 6, 2012.

Rehearing Denied May 14, 2012.

1260

Bob O. Parris, Oklahoma City, Oklahoma, Pro se.

Stephen Peterson, Beverly Pearson, J. Mark McAlester, Fenton, Fenton, Smith, Reneau & Moon, Oklahoma City, Oklahoma for Defendant/Appellee Barney Limes, M.D.

Russell L. Hendrickson, Pierce Couch Hendrickson Baysinger & Green, L.L.P., Oklahoma City, Oklahoma, for Defendants/Appellees Shelby D. Barnes, M.D. and Urology Associates, Inc.

Alexander C. Vosler, James M. Webster, Johnson, Hanan and Vosler, Oklahoma City, Oklahoma, for Defendant/Appellee Saint Anthony Hospital, tradename for SSM Healthcare of Oklahoma, Inc.

REIF, J.,

¶1 This certiorari proceeding concerns medical malpractice claims that plaintiff asserted against the medical providers who were involved in the cancer diagnosis of his prostate, the surgery to remove it and his subsequent treatment. The trial court has twice rendered judgments in favor of the defendants. The first round of judgments were reversed by Division IV of the Court of

Civil Appeals in the published case of *Parris v. Limes,* 2009 OK CIV APP 19, —— P.3d ——, 2009 WL 8575064. (*Parris I* ) On remand, plaintiff had a jury trial on his claim against the pathologist who identified cancerous cells in the needle biopsy specimen of plaintiff's prostate. The jury returned a defendant's verdict. The remaining defendants sought and obtained summary judgments based on uncontroverted expert testimony they acted in accord with medical standards. Plaintiff's appeal of the judgment on the jury verdict in favor of the pathologist was dismissed as untimely, while Division III of the Court of Civil Appeals affirmed the summary judgments (*Parris II* ). Upon certiorari review, we find *Parris II* properly affirmed the summary judgments except on plaintiff's claim against the surgeon who continued post-surgical treatment of plaintiff without disclosing the removed prostate showed no signs of cancer.

¶ 2 Briefly, the uncontroverted evidentiary material showed that the biopsy of plaintiff's prostate was properly performed by Dr. Limes, and the biopsy specimen was properly labeled and handled by Dr. Limes and St. Anthony's Hospital. The jury verdict determined there was no negligence by Dr. Brinkworth, the pre-surgical pathologist, in diagnosing cancerous cells in the specimen. In addition, plaintiff did not controvert the evidence from defendants' expert that Dr. Barnes' decision to remove plaintiff's prostate was appropriate in light of the diagnosis, and was in accordance with accepted medical practices and standards. Furthermore,

plaintiff did not controvert the opinion of defendants' expert that Dr. Barnes' post-surgical treatment was appropriate based on plaintiff's pre-surgical PSA results, the findings in the pre-surgical biopsy specimen and cases reported in the medical literature. The expert noted the existence of cases where pre-surgical biopsy specimens were positive for cancer, post-surgical pathology findings appeared to be negative for cancer and the patients experienced a reoccurrence of cancer. These considerations are certainly dispositive of any claims of negligence in the medical decisions concerning the treatment plaintiff needed and received.[1]

■ ¶ 3 These consideration are not dispositive, however, of plaintiff's claim for Dr. Barnes' continued treatment of plaintiff without disclosing that the post-surgical pathology findings showed no cancer. It is well-settled that in determining the propriety of granting a summary judgment, the trial court is not only authorized but required to rule out all theories of liability fairly encompassed within the evidentiary material presented. *Hadnot v. Shaw,* 1992 OK 21, ¶ 25, 826 P.2d 978, 987. One theory of liability not ruled out by the evidentiary material presented upon summary judgment was plaintiff's right to recover for the physician's failure to obtain "informed consent" prior to undertaking the post-surgical treatment.

¶ 4 While not artfully pleaded or raised in a conventional manner, plaintiff did sufficiently call this theory of liability to the trial court's attention in Exhibit 19 to his Motion

---

1. On remand following *Parris I,* Plaintiff has argued both in the trial court and on appeal that the trial court did not follow the Court of Civil Appeals opinion. More particularly, plaintiff complains that the trial court disregarded the portions of the opinion that (1) allowed him to rely on the doctrine of res ipsa loquitur, and (2) stated he did not need an expert to controvert expert evidence that defendants acted in accord with accepted medical practices and standards. Our review of the opinion leads us to conclude that plaintiff has misconstrued the discussion of res ipsa loquitur in *Parris I.* The application of res ipsa loquitur in *Parris I* was an issue only in regard to the summary judgment granted to Dr. Brinkworth. *Parris I* expressly states, "we conclude sufficient facts existed to establish a prima facie case of negligence, and to overcome Dr. Brinkworth's Motion for Summary Judgment."

Dr. Brinkworth was the pathologist who diagnosed cancerous cells in the biopsy specimen taken by Dr. Limes. As concerns the dismissals of Dr. Limes, St. Anthony Hospital and Dr. Barnes, the Court of Civil Appeals observed that these dispositions were based upon motions to dismiss that were grounded on plaintiff's failure to identify an expert. The Court of Civil Appeals held that granting the motions to dismiss of these defendants was an abuse of discretion, because (1) plaintiff had sufficiently identified an expert, and (2) "the trial court had not yet had the opportunity to examine the evidence." *Parris I,* 2009 OK CIV APP 19, ¶ 13, —— P.3d at ——. The Court of Civil Appeals further stated: "the issue of whether expert testimony is necessary to raise a disputed fact concerning standard of care as to those Defendants is not directly before us." *Id.* at ¶ 17 n. 6, —— P.3d at ——.

for Summary Judgment and Supplemental Objection to Defendants Summary Judgment Motions filed October 13, 2009. This exhibit contains the text of Uniform Jury Instruction 14.14 boldly titled INFORMED CONSENT-PHYSICIAN'S DUTY. The text of the instruction is accompanied by a specific argument relating to Dr. Barnes' rendering of post-surgical treatment without disclosing the removed prostate did not have cancer.

¶ 5 In Oklahoma, "[c]onsent to medical treatment, to be effective, should stem from an understanding decision based on adequate information about treatment, the available alternatives, and the collateral risks." *Scott v. Bradford*, 1979 OK 165, ¶ 10, 606 P.2d 554, 556–7. This requirement is as essential as a physician's care and skill in the performance of therapy. *Id.* at ¶ 10, 606 P.2d at 557. Simply put, a physician has an affirmative duty to inform a patient of his options and their attendant risks. *Id.*

¶ 6 If a physician breaches this duty, a patient's consent is defective, and the physician is responsible for the consequences. *Id.* If the physician obtains a patient's consent but has breached this duty to inform, "the patient has a cause of action sounding in negligence for failure to inform the patient of his options, regardless of due care exercised at treatment, assuming there is injury." *Id.* at ¶ 11, 606 P.2d at 557.

¶ 7 In recognizing this cause of action, the *Scott* opinion cited approvingly the view of the California Court of Appeals that a physician violates a duty to his patient and subjects himself to liability if he withholds any facts which are necessary to form an intelligent consent by the patient to the proposed treatment. *Id.* at ¶ 13, 606 P.2d at 557 (citing *Salgo v. Leland Stanford, Jr., Univ. Bd. of Trustees*, 154 Cal.App.2d 560, 317 P.2d 170 (1957)). In the discharge of this duty, a physician is obligated not only to disclose what he intends to do, but to supply information which addresses the question of whether he should do it. *Id.*

¶ 8 A cause of action based on a lack of informed consent has three elements: (1) breach of the duty to inform (non-disclosure), (2) causation, and (3) injury. *Id.* at

¶ 18, 606 P.2d at 558; *see also Smith v. Reisig*, 1984 OK 56, ¶ 10, 686 P.2d 285, 288 This cause of action exists to protect the prerogative of every patient to chart his own course and to determine what action he will take. *Scott*, 1979 OK 165 at ¶ 14, 606 P.2d at 557.

¶ 9 As concerns the duty to inform, the *Scott* opinion expressly considered and declined to adopt a standard of disclosure based on the professional standard of custom or usage in a local medical community. *Id.* at ¶ 15, 606 P.2d at 557–58. The opinion cited approvingly the view of the Court of Appeals for the District of Columbia that the standard for measuring performance of the duty of disclosure is conduct which is reasonable under the circumstances. *Id.* (citing *Canterbury v. Spence*, 464 F.2d 772 (D.C.Cir. 1972)). "[T]he scope of a physician's communications must be measured by his patient's need to know enough [information] to enable him to make an intelligent choice." *Id.* at ¶ 15, 606 P.2d at 558.

¶ 10 The causation element turns on whether plaintiff would have consented to the proposed treatment had he been adequately informed. *Id.* at ¶ 22, 606 P.2d at 559; *Smith*, 1984 OK 56 at ¶ 12, 686 P.2d at 288. If the plaintiff testifies he would not have consented to the treatment, then the causation problem must be resolved by examining the credibility of the plaintiff's testimony. *Id.* at ¶ 22, 606 P.2d at 559; *Smith*, 1984 OK 56 at ¶ 13, 686 P.2d at 288. The physician can protect himself from being at the mercy of a patient's hindsight by insuring that he has adequately informed each patient he treats. *Scott*, 1979 OK 165 at ¶ 23, 606 P.2d at 559.

¶ 11 In regard to the injury element, the *Scott* case said that the occurrence of an undisclosed risk is important to the determination of injury and absent such occurrence, a physician's failure to reveal the risk is possibly not actionable. *Id.* at ¶ 24, 606 P.2d at 559. While such focus on risk is entirely appropriate in cases where the treatment has produced adverse consequences, it is not relevant to recovery by a patient who contends he would have foregone the treat-

ment altogether, if he had been fully informed of all material facts. Again, a physician is obligated not only to disclose what he intends to do, but to supply information which addresses the question of whether he should do it. *Id.* at ¶ 13, 606 P.2d at 557. Furthermore, the physician is "responsible for the consequences" of providing treatment without having obtained informed consent and one of the elements of damage is any injury and expense caused by the treatment. *Smith,* 1984 OK 56 at ¶ 15, 686 P.2d at 288–89. (quoting *Scott,* 1979 OK 165 at ¶ 10, 606 P.2d at 557).

¶ 12 In applying the foregoing law to the summary judgment record in the case at hand, we first observe that all facts and inferences presented in the summary judgment record must be viewed in a light most favorable to the non-movant. *Manley v. Brown,* 1999 OK 79, ¶ 22, 989 P.2d 448, 455. Also, appellate courts must bear equally an affirmative duty to test all evidentiary material tendered in the summary process for its legal sufficiency to support the relief sought by the movant. *Id.* at ¶ 22, 989 P.2d at 455–56. Summary relief issues stand for de novo examination. *Id.* at ¶ 22, 989 P.2d at 455.

¶ 13 Upon de novo review of the summary judgment record in a light most favorable to the plaintiff, we conclude that the trial court erred in treating plaintiff's "concealment" claim as a claim predicated solely on fraud. While we find the trial court properly ruled Dr. Barnes was entitled to summary judgment on this claim under a fraud based theory of recovery, he was not entitled to complete dismissal of the claim. Under the summary judgment record, this claim remained viable insofar as it concerned plaintiff's right to recover under the theory of breach of a physician's duty to obtain informed consent.

¶ 14 In reaching this conclusion, we first observe that the summary judgment materials of both parties include a copy of plaintiff's amended petition. This pleading alleged; (1) the post-surgery pathology examination showed no evidence of cancer in the removed prostate; (2) Dr. Barnes never told plaintiff of this finding, and (3) plaintiff did not dis-

cover the truth about the post-surgery pathology until September 2004. Plaintiff's Motion for Summary Judgment filed April 19, 2009, similarly stated that Dr. Barnes intentionally concealed the information that plaintiff's prostate was cancer free. The motion added that Dr. Barnes continued to treat plaintiff for another five years after surgery and administered frequent PSA tests.

¶ 15 Dr. Barnes' answer is not included in the summary judgment record, but his Motion for Summary Judgment filed April 29, 2009, admits he provided post-surgical treatment and proffers as an undisputed fact that plaintiff returned to see Dr. Barnes as a patient for multiple return visits through November 2003. While Dr. Barnes did not directly address the issue of disclosure, one of plaintiff's summary judgment filings referenced deposition testimony by Dr. Barnes in which Dr. Barnes stated he had advised Mr. Parris of the fact that there was no cancer. Clearly, the summary judgment record discloses a controversy over the first element of whether Dr. Barnes breached his duty to inform plaintiff as an essential condition of plaintiff's consent to the post-surgical treatment.

¶ 16 As concerns the causation element, plaintiff's Objection to Barnes Supplemental Motion as to Concealment filed October 13, 2009, again recounted Dr. Barnes continued treatment of plaintiff after surgery and frequent PSA tests. This filing also expressly stated: "Had [plaintiff] know [sic] of the deceit he would not have returned for Barnes kindly treatment ..." In cases where a plaintiff testifies that he would not have consented to treatment if adequately informed, then the causation problem must be resolved by examining the credibility of the plaintiff's testimony. *Smith,* 1984 OK 56 at ¶ 13, 686 P.2d at 288. However, it is not the province of the appellate court or trial court to pass upon the credibility of witnesses on this issue. *Id.* The jury must be instructed that it must find plaintiff would have refused treatment if he is to prevail.

¶ 17 In regard to the injury element, plaintiff's amended petition generally alleged pain and suffering as detriment or damage

he sustained from the alleged wrongs of the defendants. At the first hearing on remand from *Parris I*, the trial court correctly observed that this general allegation related to plaintiff's misrepresentation or concealment claim in addition to his malpractice claims. As noted, plaintiff's motion for summary judgment filed April 9, 2009, related that Dr. Barnes "administered frequent PSA tests." In his response to Dr. Barnes' Motion for Summary Judgment, plaintiff agreed with Dr. Barnes' proffered undisputed fact of continued treatment and multiple return visits, but added that Dr. Barnes gave plaintiff "lab tests every other visit." While the exact nature of these "PSA tests" and "lab tests" is not disclosed, counsel for Dr. Barnes referred to them as "additional blood testing." At one point in commenting on the issues of injury and damages, the trial court also observed that plaintiff "continued to incur expenses in doing whatever the post-operative treatment was."

¶ 18 Upon trial, if a jury does believe plaintiff's testimony that Dr. Barnes did not tell plaintiff there was no cancer in the removed prostate and that he would not have consented to the post-surgical treatment if he had known this fact, then Dr. Barnes is "responsible for the consequences," including any injury and expense incurred in the treatment. *Id.* at ¶ 15, 686 P.2d at 288–89. The injury for which a patient may recover need not be extensive or permanent, and can include the temporary discomfort of invasive blood testing. Recoverable expenses can include not only the cost of the treatment, but all necessary and reasonable expenses of travel to and from the treatment, and the value of a patient's time in attending the treatment as well as the time in traveling to and from the treatment.[2]

¶ 19 In conclusion, we hold the trial court properly granted summary judgment to the defendants on plaintiff's medical malpractice claims and to Dr. Barnes and Urological Associates, Inc. on plaintiff's claim for "concealment" as a fraud-based theory of recovery. We further hold that the trial court erred, however, in granting summary judgment to Dr. Barnes on plaintiff's claim for "concealment" insofar as it is grounded on a theory of "informed consent."[3] Based on the summary judgment record, a jury must determine (1) whether Dr. Barnes informed plaintiff that there was no cancer found in plaintiff's removed prostate before undertaking post-surgical treatment of plaintiff, and, if not informed, (2) whether plaintiff is truthful in his assertion he would not have accepted this treatment from Dr. Barnes had Dr. Barnes informed him that no cancer was found in the removed prostate; and if plaintiff is found credible, (3) the damage or detriment plaintiff suffered as a consequence of the post-surgical treatment as well as the amount that would compensate him for such damage or detriment. In the trial of this matter, plaintiff is not required to present expert testimony concerning Dr. Barnes' duty to inform or disclose, or to establish a breach of this duty. The trial court is to instruct the jury on this issue in accordance with Uniform Jury Instruction 14.14 and generally in a manner consistent with the doctrine of informed consent as discussed in this opinion. The trial court is to instruct the jury that plaintiff's damages can include all necessary and reasonable expenses of travel to and from treatment, the value of his time in attending the treatment, including travel to and from the treatment, in addition to any injury and the expense caused by the treatment.

2. In the physician-patient relationship, the physician is not the only party whose time is valuable; the patient's time has value as well. It is only fair and reasonable that a doctor should compensate a patient for wasting the patient's time in administering treatment for which the patient has not given informed consent due to concealment or non-disclosure of material facts by the doctor.

3. The duty to inform is personal to the physician and, therefore, this claim is remanded for trial only as to Dr. Barnes' liability and not for determination of liability on the part of Urological Associates, Inc. The duty to make full and frank disclosure to the patient of all pertinent facts relative to his illness and the treatment prescribed or recommended flows from the fact that the relation between a physician and patient is one of confidence and trust. *Woods v. Brumlop*, 71 N.M. 221, 377 P.2d 520, 524 (1962). Oklahoma has long recognized that the relationship between a physician and patient is a fiduciary and confidential relationship. *Clinton v. Miller*, 1919 OK 266, 77 Okla. 173, 186 P. 932.

CERTIORARI PREVIOUSLY GRANTED; THE OPINION OF THE COURT OF CIVIL APPEALS IS VACATED; THE TRIAL COURT'S SUMMARY JUDGMENTS AFFIRMED IN TOTO EXCEPT AS TO PLAINTIFF'S CLAIM AGAINST DEFENDANT SHELBY D. BARNES, M.D. FOR TREATMENT WITHOUT DISCLOSURE.

¶ 20 TAYLOR, C.J., WATT, WINCHESTER, EDMONDSON, REIF, and COMBS., JJ., concur.

¶ 21 GURICH, J., dissents.

¶ 22 COLBERT, V.C.J., and KAUGER, J., not participating.