**Norma Jo SCOTT and Dale M. Scott, Appellants,**

v.

**Vance A. BRADFORD, Appellee.**

No. 51208.

Supreme Court of Oklahoma.

Nov. 28, 1979.

Rehearing Denied Feb. 25, 1980.

Yon, Yon & Brooks, Oklahoma City, for appellants.

George F. Short, Robert C. Margo, Oklahoma City, for appellee.

DOOLIN, Justice:

This appeal is taken by plaintiffs in trial below, from a judgment in favor of defendant rendered on a jury verdict in a medical malpractice action.

Mrs. Scott's physician advised her she had several fibroid tumors on her uterus. He referred her to defendant surgeon. Defendant admitted her to the hospital where she signed a routine consent form prior to defendant's performing a hysterectomy. After surgery, Mrs. Scott experienced problems with incontinence. She visited another physician who discovered she had a vesico-vaginal fistula which permitted urine to leak from her bladder into the vagina. This physician referred her to an urologist who, after three surgeries, succeeded in correcting her problems.

Mrs. Scott, joined by her husband, filed the present action alleging medical malpractice, claiming defendant failed to advise her of the risks involved or of available alternatives to surgery. She further maintained had she been properly informed she would have refused the surgery.

The case was submitted to the jury with instructions to which plaintiffs objected. The jury found for defendant and plaintiffs appeal.

In plaintiffs' amended appeal brief it is suggested that the trial court erred in failing to instruct the jury on the issue of defendant's abandonment of plaintiff post surgery. Although plaintiffs did offer two requested instructions on this issue, not given, they did not set them out in their brief as required by the rules of this Court, 12 O.S. 1971, Ch. 15, App. 1, Rule 15. Neither do plaintiffs offer any authority to suggest a cause of action based solely on abandonment exists. In reviewing the evidence we do not find any willful abandonment such as would warrant a separate instruction. Abandonment, an indicia of negligence, is covered by court's general instructions on negligence and proximate cause. We find no reversible error in this area.

Plaintiffs complain of three instructions and submit the following instruction should have been given:

"The law requires physician to disclose to his patient the material risks of a proposed treatment, the material risks of foregoing any treatment, the existence of any alternatives and the material risks of choosing these alternatives. *The failure to disclose these things is negligence.*

"A risk is 'material' when a reasonable person, in what the physician knows or should know to be the patient's position, would be likely to attach significance to the risk or cluster of risks in deciding whether or not to forego the proposed therapy.

"If you find from the evidence in this case that the defendant failed to make disclosures to the plaintiff, NORMA JO SCOTT, as required by law, then your verdict would be for the plaintiffs, for the amount of their damages proximately caused thereby."

This instruction refers to the doctrine of "informed consent".

The issue involved is whether Oklahoma adheres to the doctrine of informed consent as the basis of an action for medical malpractice, and if so did the present instructions adequately advise the jury of defendant's duty.

Anglo-American law starts with the premise of thoroughgoing self-determination, each man considered to be his own master. This law does not permit a physician to substitute his judgment for that of the patient by any form of artifice.[1] The doctrine of informed consent arises out of this premise.

Consent to medical treatment, to be effective, should stem from an under-

---

1. See *Natanson v. Kline*, 186 Kan. 393, 350 P.2d 1093, reh. den. 187 Kan. 186, 354 P.2d 670 (1960). Also see *Rolater v. Strain*, 390 Okl. 572, 137 P. 96 (1913).

standing decision based on adequate information about the treatment, the available alternatives, and the collateral risks. This requirement, labeled "informed consent," is, legally speaking, as essential as a physician's care and skill in the *performance* of the therapy. The doctrine imposes a duty on a physician or surgeon to inform a patient of his options and their attendant risks. If a physician breaches this duty, patient's consent is defective, and physician is responsible for the consequences.[2]

█ If treatment is completely unauthorized and performed without any consent at all, there has been a battery.[3] However, if the physician obtains a patient's consent but has breached his duty to inform, the patient has a cause of action sounding in negligence for failure to inform the patient of his options, regardless of the due care exercised at treatment, assuming there is injury.[4]

Until today, Oklahoma has not officially adopted this doctrine. In *Martin v. Stratton, 515 P.2d 1366 (Okl.1973)*, this Court discussed a physician's duty in this area but reversed the trial court on other grounds. It impliedly approved the doctrine and stated its basic principles but left its adoption until a later time.

The first buds of court decisions heralding this new medical duty are found in *Salgo v. Leland Stanford, Jr., University Board of Trustees, 154 Cal.App.2d 560, 317 P.2d 170 (1957)*. That court grounded the disclosure requirement in negligence law holding a physician violates a duty to his patient and subjects himself to liability if he withholds any facts which are necessary to form the basis of an intelligent consent by the patient to the proposed treatment. The court strongly suggested a physician is obligated not only to disclose *what* he intends to do, but to supply information which addresses the question of *whether* he should do it. This view was a marked divergence from the general rule of "professional standard of care" in determining what must be disclosed. Under that standard, earlier decisions seemed to perpetuate medical paternalism by giving the profession sweeping authority to decide unilaterally what is in the patient's best interests.[5] Under the "professional standard of care" a physician needed only to inform a patient in conformance with the prevailing medical practice in the community.[6]

More recently, in perhaps one of the most influential informed consent decisions, *Canterbury v. Spence, 150 U.S.App.D.C. 263, 464 F.2d 772 (D.C.Cir.1972)*, cert. den. *409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518*, the doctrine received perdurable impetus. Judge Robinson observed that suits charging failure by a physician adequately to disclose risks and alternatives of proposed treatment were not innovative in American law. He emphasized the fundamental concept in American jurisprudence that every human being of adult years and sound mind has a right to determine what shall be done with his own body. True consent to what happens to one's self is the informed exercise of a choice. This entails an opportunity to evaluate knowledgeably the options available and the risks attendant upon each. It is the prerogative of every patient to chart his own course and determine which direction he will take.

██ The decision in *Canterbury* recognized the tendency of some jurisdictions to turn this duty on whether it is the custom of physicians practicing in the community to make the particular disclosure to the patient. That court rejected this standard and held the standard measuring performance of the duty of disclosure is conduct

---

2. *Martin v. Stratton*, 515 P.2d 1366 (Okl.1973).

3. See *Rolater v. Strain*, supra, n. 1; *Wilkinson v. Vesey*, 110 R.I. 606, 295 A.2d 676 (1972).

4. *Wilkinson v. Vesey*, supra, n. 3.

5. See Katz, *Informed Consent—A Fairy Tale?* 39 U.Pitt.L.Rev. 137, 143 (1977).

6. See list of jurisdictions still maintaining this standard of care as of 1976, found in an excellent discussion of the problem, Seidelson, *Medical Malpractice; Informed consent cases in "Full-Disclosure" Jurisdictions*, 14 Duq.L.Rev. 309 (1976).

which is reasonable under the circumstances: "[We can not] ignore the fact that to bind disclosure obligations to medical usage is to arrogate the decision on revelation to the physician alone." We agree. A patient's right to make up his mind whether to undergo treatment should not be delegated to the local medical group. What is reasonable disclosure in one instance may not be reasonable in another.[7] We decline to adopt a standard based on the professional standard. We, therefore, hold the scope of a physician's communications must be measured by his patient's need to know enough to enable him to make an intelligent choice. In other words, full disclosure of all *material risks* incident to treatment must be made. There is no bright line separating the material from the immaterial; it is a question of fact. A risk is material if it would be likely to affect patient's decision. When non-disclosure of a particular risk is open to debate, the issue is for the finder of facts.[8]

This duty to disclose is the first element of the cause of action in negligence based on lack of informed consent. However, there are exceptions creating a privilege of a physician not to disclose. There is no need to disclose risks that either ought to be known by everyone or are already known to the patient.[9] Further, the primary duty of a physician is to do what is best for his patient and where full disclosure would be detrimental to a patient's total care and best interests a physician may withhold such disclosure,[10] for example, where disclosure would alarm an emotionally upset or apprehensive patient. Certainly too, where there is an emergency and the patient is in no condition to determine for himself whether treatment should be administered, the privilege may be invoked.[11]

The patient has the burden of going forward with evidence tending to establish prima facie the essential elements of the cause of action. The burden of proving an exception to his duty and thus a privilege not to disclose, rests upon the physician as an affirmative defense.

The cause of action, based on lack of informed consent, is divided into three elements: the duty to inform being the first, the second is causation, and the third is injury. The second element, that of causation, requires that plaintiff patient would have chosen no treatment or a different course of treatment had the alternatives and material risks of each been made known to him. If the patient would have elected to proceed with treatment had he been duly informed of its risks, then the element of causation is missing. In other words, a causal connection exists between physician's breach of the duty to disclose and patient's injury when and only when disclosure of material risks incidental to treatment would have resulted in a decision against it.[12] A patient obviously has no complaint if he would have submitted to the treatment if the physician had complied with his duty and informed him of the risks. This fact decision raises the difficult question of the correct standard on which to instruct the jury.

The court in *Canterbury v. Spence, supra,* although emphasizing principles of self-determination permits liability only if non-disclosure would have affected the decision of a fictitious "reasonable patient," even though actual patient testifies he would have elected to forego therapy had he been fully informed.

Decisions discussing informed consent have emphasized the *disclosure* element but

7.  *Wilkinson v. Vesey,* supra, n. 3.

8.  *Woods v. Brumlop,* 71 N.M. 221, 377 P.2d 520 (1962); *Canterbury v. Spence,* 150 U.S.App. D.C. 263, 464 F.2d 772 (D.C.Cir.1972); *Natanson v. Kline,* 187 Kan. 186, 354 P.2d 670 (1960).

9.  *Yeates v. Harms,* 193 Kan. 320, 393 P.2d 982 (1964).

10.  *Nishi v. Hartwell,* 52 Haw. 188, 473 P.2d 116 (1970).

11.  *Woods v. Brumlop,* supra, n. 8.

12.  *Martin v. Stratton,* supra, n. 2; also see *Holt v. Nelson,* 11 Wash.App. 230, 523 P.2d 211 (1974).

paid scant attention to the consent element of the concept, although this is the root of causation. Language in some decisions suggest the standard to be applied is a subjective one, i. e., whether that particular patient would still have consented to the treatment, reasonable choice or otherwise. See *Woods v. Brumlop, supra, n. 8; Wilkinson v. Vesey, supra, n. 3; Gray v. Grunnogle, 423 Pa. 144, 223 A.2d 663 (1966); Poulin v. Zartman, 542 P.2d 251 (Alaska 1975), reh. den. 548 P.2d 1299 (Alaska 1976).*

Although the *Canterbury* rule is probably that of the majority,[13] its "reasonable man" approach has been criticized by some commentators [14] as backtracking on its own theory of self-determination. The *Canterbury* view certainly severely limits the protection granted an injured patient. To the extent the plaintiff, given an adequate disclosure, would have declined the proposed treatment, and a reasonable person in similar circumstances would have consented, a patient's right of self-determination is *irrevocably lost*. This basic right to know and decide is the reason for the full-disclosure rule. Accordingly, we decline to jeopardize this right by the imposition of the "reasonable man" standard.

If a plaintiff testifies he would have continued with the proposed treatment had he been adequately informed, the trial is over under either the subjective or objective approach. If he testifies he would not, then the causation problem must be resolved by examining the credibility of plaintiff's testimony. The jury must be instructed that it must find plaintiff would have refused the treatment if he is to prevail.

Although it might be said this approach places a physician at the mercy of a patient's hindsight, a careful practitioner can always protect himself by insuring that he has adequately informed each patient he treats. If he does not breach this duty, a causation problem will not arise.

The final element of this cause of action is that of injury. The risk must actually materialize and plaintiff must have been injured as a result of submitting to the treatment. Absent occurrence of the undisclosed risk, a physician's failure to reveal its possibility is not actionable.[15]

In summary, in a medical malpractice action a patient suing under the theory of informed consent must allege and prove:

1) defendant physician failed to inform him adequately of a material risk before securing his consent to the proposed treatment;

2) if he had been informed of the risks he would not have consented to the treatment;

3) the adverse consequences that were not made known did in fact occur and he was injured as a result of submitting to the treatment.

As a defense, a physician may plead and prove plaintiff knew of the risks, full disclosure would be detrimental to patient's best interests or that an emergency existed requiring prompt treatment and patient was in no condition to decide for himself.[16]

Because we are imposing a new duty on physicians, we hereby make this opinion prospective only, affecting those causes of action arising after the date this opinion is promulgated.[17]

The trial court in the case at bar gave rather broad instructions upon the duty of a physician to disclose. The instructions objected to did instruct that defendant should

---

**13.** See *Archer v. Galbraith*, 18 Wash.App. 369, 567 P.2d 1155 (1977); *Funke v. Fieldman*, 212 Kan. 524, 512 P.2d 539 (1973); *Cobbs v. Grant*, 8 Cal.3d 229, 104 Cal.Rptr. 505, 502 P.2d 1 (1972).

**14.** Seidelson, *Medical Malpractice: Informed Consent Cases in "Full-Disclosure" Jurisdictions*, 14 Duq.L.Rev. 309 (1976); Katz, *Informed Consent—A Fairy Tale?* Laws Vision, 39 U.Pitt.L.Rev. 137 (1977).

**15.** *Downer v. Veilleux*, 322 A.2d 82 (Me.1974); *Hales v. Pittman*, 576 P.2d 493 (Ariz.1978).

**16.** We do not hold these to be the sole defenses, as others may be presented in the future.

**17.** See *First National Bank of Porter v. Howard*, 550 P.2d 561 (Okl.1976).

have disclosed material risks of the hysterectomy and feasibility of alternatives. Instructions are sufficient when considered as a whole they present the law applicable to the issues.[18] Jury found for defendant. We find no basis for reversal.

AFFIRMED.

LAVENDER, C. J., and HODGES, HARGRAVE and OPALA, JJ., concur.

BARNES, Justice, concurring in part, dissenting in part:

I concur with the majority opinion in all respects except I would adopt the reasonable man test set out in *Canterbury v. Spence, 150 U.S.App.D.C. 263, 464 F.2d 772 (D.C.Cir.1972), cert. den. 409 U.S. 1064, 93 S.Ct. 560, 34 L.Ed.2d 518.*

I am authorized to state that IRWIN, V. C. J., SIMMS, J., and REYNOLDS, Special Justice, join in the views expressed in this opinion.

**18.** *Fields v. Volkswagen,* 555 P.2d 48 (Okl. 1976).