Isaiah Daniel SPENCER, a minor By and Through his mother and natural guardian, Paula SPENCER, and Paula Spencer, Individually, Appellants,

v.

Mike R. SEIKEL, M.D. and Fenton M. Sanger, M.D., Appellees.

No. 63310.

Supreme Court of Oklahoma.

July 21, 1987.

Rehearing Denied Sept. 29, 1987.

---

Gary L. Brooks & Associates by Mary Hanan and Caroll E. Gregg, Oklahoma City, for appellants.

Short, Barnes, Wiggins Margo & Adler by Robert C. Margo and Cynthia L. Sparling, Oklahoma City, for appellees.

DOOLIN, Chief Justice.

On October 14, 1981 plaintiff/appellant, hereinafter "patient", engaged the services of defendant/appellee, hereinafter "doctor", for prenatal care relative to her third pregnancy. During the course of treatment, on December 16, 1981, doctor discovered fetus was suffering from hydrocephalus, a condition which results from the backing up of cerebrospinal fluid into the brain ventricles. This condition usually produces retardation of brain development.

Patient gave birth to the plaintiff/appellant child in the spring of 1982. The child was born with virtually no brain. He is blind, most likely deaf, and will continue to live in a vegetable-like condition throughout his life.

Patient and child have sued doctor under Oklahoma Informed Consent Law alleging the doctor was negligent in failing to disclose material information concerning abortion as an alternative course of treatment. Patient argues she told doctor that she could not raise an abnormal child and that had doctor informed her of abortion as an available alternative, she would have chosen that course of treatment and thus avoiding the $6 million damages prayed for on behalf of herself and the child.

██ The doctor argues that on December 16, 1981 when he first discovered hydrocephalus, the fetus was viable and therefore abortion was not an available alternative. According to doctor, on December 16 the fetus was 23 or 24 weeks old; and abortion was forbidden by statute in Oklahoma once the fetus was viable, unless the mother's life or health was in danger. Therefore, doctor argues, he had no duty to disclose information about an alternative treatment not legally available to his patient. We agree.

Patient argues that because the Oklahoma abortion statute is unconstitutional, and because physicians in Oklahoma must conform to national, not local, standards of care in treatment of patients, doctor was negligent for not informing her that an abortion might be performed outside Oklahoma.

A jury rendered a verdict for doctor, patient and child appealed to the Oklahoma Court of Appeals where the verdict was affirmed. After a timely motion, rehearing was denied, certiorari was granted.

### I.

Patient alleges error by the trial court in giving instructions 7, 8 and 9. Those instructions indicate that the locality rule establishes the standard of care required of physicians who practice medicine in Oklahoma.

██ We hold that because physicians in Oklahoma must adhere to national standards of care, it was error for the trial court to instruct on the locality rule.[1] Had the doctor's care been at issue in this case, such error could have required reversal but because the standard of care issue was not significant, in this case, it was not reversible error to instruct on the locality rule. As the 10th Circuit Court held in *O'Neil v. Great Plains Women's Clinic*,[2] error in instructing on the locality rule in Oklahoma, where national standards govern

---

1. 76 O.S.Supp., 1983, § 20.1.

2. 759 F.2d 787 (10th Cir.1985).

medical practice, did not affect the substantive rights of the parties where the standard of care was not a significant issue at trial.

Since patient's cause of action is couched in terms of a failure to obtain informed consent, the instructions on professional standards of care are irrelevant when viewed in the light of the particular facts of this case.

■ This Court in *Scott v. Bradford*[3] held the doctor's duty to inform his patient of material risks and alternative treatments is judged by the *patient's* need to know.[4] A patient prevails under *Scott* only when she proves, subjectively, that full disclosure of the material risk or alternative would have altered her decision to consent to treatment. Thus, because what is material to a patient's decision is subjective to each patient, objective or general professional standards are ineffective to determine the scope of the physician's duty to obtain informed consent in a given case. Therefore any instruction on local or national standards went to matters which were not determinative of the issues before the jury.

■ Furthermore, as a defense, a physician may plead and prove the patient knew of the risks or alternatives, or show that an emergency existed to prevent consent from being given.[5]

■ Patient cannot recover in this case because the record of the proceedings below clearly shows she knew that abortion was an alternative treatment. In so holding we are not creating any sort of "common knowledge exception" to the requirement for informed consent. We are only saying that where, as here, the record indicates patient knew of the alternative at the time she claims such knowledge was critical to her decision, she has not proved her prima facie case. Here patient had consulted doctor during a previous pregnancy where she sought an abortion, although she later decided against that option. This patient knew abortion was an alternative to full term pregnancy.

## II.

■ Patient argues doctor had a duty to inform her that abortion, although prohibited in Oklahoma at her stage of pregnancy, was available in other states. This Court refuses to impose such a duty on physicians. Holding that physicians must inform patients of treatment alternatives not available in Oklahoma but available in other states is beyond what the law expects from physicians. Searching for legal alternatives is a job more suitable for lawyers.

■ Further, since Oklahoma law was applicable in this case, patient's contention that the trial court erred in not instructing on the abortion laws of Texas, Kansas, and Colorado is without merit. Since doctors who practice in this state must conform to Oklahoma Law, it was proper for the trial court to confine its instructions to Oklahoma law.

■ Patient is correct in her assertion that physicians in Oklahoma are held to national standards of care but those standards do not impose upon physicians a duty to know or disclose the laws of other states which are contrary to laws in the state wherein they practice. National standards are applicable in measuring the standard of medical care physicians owe their patients in rendering treatment to them. Here it is not alleged nor proved that doctor failed to exercise the degree of skill or knowledge required of him in treating this patient, nor that the doctor's care or omission was the cause of the hydrocephalic condition from which this child suffers.[6]

---

3. 606 P.2d 554 (Okl.1980).

4. *Id.* at 556.

5. *Id.* at 559.

6. In both cases patient cites which held doctor's duty to disclose information about abortion, *Robak v. United States,* 658 F.2d 471 (7th Cir.

1981); and *Jacobs v. Theimer,* 519 S.W.2d 846 (Tex.1975), the doctor either failed to detect the underlying abnormality, or failed to tell the patient of the underlying abnormality and its attendant risks. Unlike the doctors in those cases who did not tell their patients that German Measles could result in fetal abnormalities,

## III.

Patient next contends that the applicable section of the Oklahoma Abortion Statute [7] is unconstitutional, and it was reversible error for the trial court to have instructed or allowed evidence related to it to reach the jury. This Court rejects that argument because the statute in question is within the bounds of constitutionality, and therefore any reliance upon it by the doctor or the court was acceptable. The pertinent section reads:

No person shall perform or induce an abortion upon a pregnant woman after such time as her unborn child has become viable unless such abortion is necessary to prevent impairment.[8]

The United States Supreme Court has consistently held that the state's interest in fetal survival becomes compelling at viability. At viability that interest is so compelling that the state may proscribe abortions altogether, except when necessary to protect the life or health of the mother.[9] These cases all acknowledge that although a woman's right to an abortion is fundamental, it is not necessarily unqualified; it must be considered against compelling state interests in regulating abortions.

The key issue then becomes whether or not a fetus is viable. The United States Supreme Court provided guidance on this question when it said:

Viability is reached when, in the judgment of the attending physician on the particular facts of the case before him, there is a reasonable likelihood of the fetus' sustained survival outside the womb, with or without artificial support.[10]

In the present case doctor determined the fetus was viable and approximately 24 weeks old. With that determination, he was prohibited from performing an abortion by that part of the Oklahoma law which passes constitutional scrutiny. It is not error for a court to instruct the jury on a valid and clearly applicable statute.

Since other portions of the Oklahoma abortion statute are not properly at issue in this case, we need not address them.

## IV.

Patient contends that she was prejudiced by jury instructions on the law of ordinary negligence in this case. We believe because negligence is so closely tied to the pleadings and proof in this case, an instruction on negligence was proper.

## V.

Patient's final argument is that remarks made at trial concerning homicide were calculated to prejudice the jury and were improper. The jury was adequately admonished to disregard those remarks. Since the remarks were made by doctors in regard to criminal sanctions in abortion cases, those remarks could be considered probative and do not constitute grounds for mistrial.

Opinion of the Court of Appeals is VACATED, Judgment of the Trial Court is AFFIRMED.

HODGES, LAVENDER, SIMMS, OPALA, ALMA WILSON, KAUGER and SUMMERS, JJ., concur.

HARGRAVE, V.C.J., not participating.

the doctor in this case fully disclosed the hydrocephalus and its effects.

7.  63 O.S.1981, §§ 1–731–734.

8.  63 O.S.1981, § 1–732A.

9.  *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Colautti v. Franklin,* 439 U.S. 379, 99 S.Ct. 675, 58 L.Ed.2d 596 (1979); *Akron v. Akron Center for Reproductive Health,* 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983); *Planned Parenthood v. Ashcroft,* 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983); and *Thornburgh v. American College of Obstetricians and Gynecologists,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986).

10.  *Colautti v. Franklin,* 439 U.S. at 388, 99 S.Ct. at 682 (1979).