OSCN Found Document:ALLEN v. HARRISON

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 ALLEN v. HARRISON
2016 OK 44
Case Number: 111877
Decided: 04/19/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 44, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

Teresa Lynn Allen, Appellant,
v.
John J. Harrison, D.O. Appellee.

CERTIORARI TO THE COURT OF CIVIL APPEALS, DIVISION I

¶0 Patient, who accidentally swallowed a nail, brought a medical malpractice action based, inter alia, upon a claim of lack of informed consent against the hospital's emergency room physician after the physician advised patient to "eat fiber and let the nail pass." The physician did not, however, disclose the alternative medical options which included endoscopic and surgical removal of the ingested nail. Following severe vomiting, the patient proceeded to a different emergency room. Emergency surgery was performed to remove the nail, and the patient was treated for a perforated and infected bowel. The trial court, Honorable Brent Russell, granted partial summary judgment in favor of the physician on the issue of informed consent, and the Court of Civil Appeals affirmed.

CERTIORARI PREVIOUSLY GRANTED;
OPINION OF COURT OF CIVIL APPEALS VACATED;
TRIAL COURT REVERSED;
CAUSE REMANDED FOR PROCEEDINGS
CONSISTENT WITH THIS OPINION

Jon Williford, Griffin, Reynolds, and Associates, Oklahoma City, for Appellant.
Lane O. Krieger, Wiggins Sewell & Ogletree, Oklahoma City, for Appellee.

COLBERT, J.

¶1 This is a medical malpractice case premised in part on the doctrine of informed consent. The issue presented on certiorari review is whether the doctrine of informed consent requires a physician to obtain the patient's consent before implementing a nonsurgical or noninvasive course of treatment. Inherent in the question presented, is whether a physician-in addition to discussing with the patient treatment alternatives that the physician recommends-should discuss medically reasonable alternatives that the physician does not recommend. Based on the following, this Court answers both questions in the affirmative.

BACKGROUND AND PROCEDURAL HISTORY

¶2 Appellant, Teresa Lynn Allen (Allen), swallowed a small nail on June 1, 2009. She went to Duncan Regional Hospital's emergency room in Duncan, Oklahoma. Appellee, John J. Harrison, D.O., emergency room physician (Physician), examined Allen. Physician ordered an X-ray of Allen's stomach. The X-ray confirmed the presence of a foreign body in Allen's stomach, just below the diaphragm. Based on Physician's assessment and clinical judgment, Physician discharged Allen prescribing: (1) "a high-fiber diet to let the nail pass;" (2) return to the hospital if she had any problems; and (3) follow up with her family doctor in three days. On June 2, 2009, following severe vomiting, Allen went to the emergency room at Southwestern Hospital in Lawton, Oklahoma. That same day, the hospital performed emergency surgery to remove the ingested nail from Allen's intestines. At that time, Allen was treated for a perforated and infected bowel. In addition, Allen endured two additional surgeries to treat the complications that arose from the emergent surgery of June 2, 2009.

¶3 Allen sued Duncan Regional Hospital and Physician for the defendants' alleged medical negligence and failure to obtain Allen's informed consent.[1] Specifically, Allen contended that Physician failed to disclose the potential risk in letting the nail pass through her digestive system as well as the alternatives to his recommended course of treatment. Had Physician effectively discharged his duty to disclose, Allen would have "chosen the option of no treatment or a different course of treatment."

¶4 During discovery, Physician admitted that he neither advised Allen of the alternative treatment options-namely, endoscopic or surgical intervention-nor consulted with a surgeon prior to Allen's discharge. However, Physician testified that he was not qualified to perform an endoscopic or other surgical procedure to extract the nail. Those alternative treatment options, according to Physician, were beyond his field of practice. And, therefore, Physician was not required to advise Allen of those alternatives.

¶5 Physician filed a Motion for Partial Summary Judgment asserting that he was entitled to judgment as a matter of law on Allen's informed consent claim. Physician contended that under Oklahoma law, a valid informed consent claim is only recognized in cases involving the performance of an affirmative treatment by a defendant physician. But where, as here, Physician relied on his clinical judgment and did not affirmatively treat and cause Allen's injuries, the elements of informed consent cannot be satisfied. Physician also alleged that Oklahoma law does not require an emergency physician to offer "options" of surgical/endoscopic treatment outside the emergency department and outside the expertise of an emergency physician. The trial court agreed and granted Physician's motion, reasoning that,

the Court can find no case supporting the doctrine of informed consent where no action was taken by the attending physician. Rather, such doctrine applies when the treatment received causes injury, and alternative procedures were not explained. Plaintiff's claim is one of negligence based upon Defendant's failure to appropriately recognize and treat the symptoms presented by Plaintiff.

(Emphasis added). Allen unsuccessfully sought reconsideration of the trial court's ruling granting Physician's summary judgment request. Allen's medical negligence claim against Physician, however, proceeded to trial. The jury returned a verdict in favor of Physician and Allen appealed.

¶6 The Court of Civil Appeals affirmed on slightly different grounds. Relying on Smith v. Reisig, M.D., Inc., 1984 OK 56, 686 P.2d 285, the appellate court concluded the doctrine of informed consent is triggered only when a physician provides surgical treatment resulting in the patient's injury but failed to disclose the viable alternatives to surgery. Allen filed this petition for certiorari review, which this Court granted.

STANDARD OF REVIEW

¶7 Upon appellate review, summary judgment will be affirmed only if this Court determines the moving party presented evidentiary materials establishing that uncontroverted facts and all inferences that can be drawn therefrom support only one conclusion-that the moving party is entitled to judgment as a matter of law. See Wathor v. Mut. Assurance Adm'rs, Inc., 2004 OK 2, ¶ 4, 87 P.3d 559, 561; Hadnot v. Shaw, 1992 OK 21, ¶ 25, 826 P.2d 978, 987. However, where a de novo review of the record in the light most favorable to the non-moving party confirms that no material issues of fact exist, but rather reveals that the trial court misinterpreted the applicable law, summary judgement will be reversed. See, Kluver v. Weatherford Hospital Authority, 1993 OK 85, ¶ 14, 859 P.2d 1081, 1083 (issues of law are reviewed de novo).

DISCUSSION

¶8 This Court begins with the premise that "each man [is] considered to be his own master." Scott v. Bradford, 1979 OK 165, ¶ 9, 606 P.2d 554, 556. A patient's right of self-decision is only exercised effectively if the patient possesses enough information to enable an informed choice. Id.,¶ 10, 606 P.2d at 557. That is, a patient has the right to make his or her own determination about treatment. With that premise in mind, Oklahoma law forbids a physician to substitute one's judgment for that of the patient by any form of artifice. Id.,¶ 9, 606 P.2d at 556. This Court's decision in Scott v. Bradford rendered almost thirty-six years ago, anchored the doctrine of informed consent in that premise. Id.

¶9 Informed consent is a basic principle sounding in ethics and law that physicians must honor unless the patient is unconscious or otherwise incapable of consenting and harm from failure to treat is imminent. American Medical Association, Code of Medical Ethics: Opinion 8.08 (2006). The linchpin of informed consent is a physician's duty to inform a patient of the medically reasonable treatment options and their attendant risks. Id. A physician is charged with the obligation to present the medical facts accurately to the patient or his proxy and to make recommendations for management in accordance with good medical practice. In so doing, a physician should disclose all courses of treatment that are medically reasonable under the circumstances. But, a physician is not permitted to "withhold[] any facts which are necessary to form an intelligent consent by the patient to the proposed treatment." Parris v. Limes, 2012 OK 18, ¶ 7, 277 P.3d 1259, 1263. In fact, to effectively discharge "this duty, a physician is obligated not only to disclose what he intends to do, but to supply information which addresses the question of whether he should do it." Id. So, "[i]f a physician breaches this duty, [a] patient's consent is defective, and [the] physician is responsible for the consequences." Scott, 1979 OK 165, ¶ 10, 606 P.2d at 557.

¶10 A cause of action premised on the lack of informed consent is comprised of three essential elements: (1) non-disclosure, (2) causation, and (3) injury. Scott v. Bradford, 1979 OK 165, ¶ 18, 606 P.2d 554, 558. The full disclosure rule announced in Scott is not without exceptions. Although a physician's failure to disclose is the first element in maintaining this cause of action, such a duty may be excused when the circumstances so warrant. For instance, disclosure is not required when the risks are common knowledge or known by the patient; "where full disclosure would be detrimental to a patient's total care and best interest . . .;" or in cases of an emergency in which the patient or his proxy is unable to determine for himself "whether treatment should be administered . . .". Id., ¶ 16, 606 P.2d at 558.

¶11 On appeal, the parties disagree about the interpretation of Scott, and its progeny. The differences between these interpretations come to the fore when a court, as here, must consider a physician's duty to obtain a patient's informed consent regardless of whether the physician is implementing an invasive or noninvasive course of treatment. Allen argues that the doctrine of informed consent is not limited to surgical intervention. Rather, the doctrine applies to a physician's recommenced course of treatment whether invasive or noninvasive. Physician, however, contends the doctrine does not apply to emergency room physicians. Therefore, to require an emergency room physician to provide surgical/invasive options outside his scope of practice and contrary to his medical judgment would be an expansion of Oklahoma's informed consent laws. Physician is mistaken.

¶12 The problem with the Physician's interpretation and the application of the courts below are twofold: (1) it falsely advances the position that a physician must secure a patient's informed consent only for surgical procedures, not for those that are noninvasive; and (2) it ignores this Court's expressed pronouncement in Scott, that the scope of a physician's communication is measured by the "patient's need to know enough to enable him to make an intelligent choice," not the physician's professional standard. See Scott, 1979 OK 165, ¶ 15, 606 P.2d at 558.

¶13 Pursuant to Scott, the informed consent doctrine is predicated on a physician's duty to disclose. The decisive factor is not the invasiveness of the treatment, but whether the physician provided the patient with enough information that would enable the patient to make an informed choice before subjecting the patient to a recommended course of treatment. As a practical matter, a physician will recommend a course of treatment and a patient generally chooses to adopt the physician's recommendation. It is well-settled that the ultimate decision rests with the patient. Therefore, physicians do not adequately discharge their obligations by limiting their disclosures to the treatments they recommend or treatments within their scope of practice.

¶14 In Smith v. Reisig, M.D., Inc., a patient filed suit against her physician for lack of informed consent after undergoing a hysterectomy that resulted in injury to her bladder. 1984 OK 56, 686 P.2d 285. The physician's testimony and other evidence established that hormonal therapy was a viable alternative to the hysterectomy and possibly preferable to the surgery. Id., ¶ 11, 686 P.2d at 288. But, that alternative was not disclosed to the patient. This Court found the physician failed to disclose the viable alternatives to the patient and, "that single failure to inform" was a violation of the physician's obligation to disclose. Id. "If the remaining elements are satisfied such violation gives rise to liability for the results of the treatment." Id.

¶15 Most recently, in Parris v. Limes, this Court held that an informed consent claim could withstand summary judgment when the patient claimed he would not have undergone multiple invasive tests after the surgical removal of his prostate, had the physician ordering the tests disclosed that the surgical pathology revealed no cancerous cells. 2012 OK 18, 277 P.3d 1259.

¶16 In examining the seminal cases shaping the informed consent doctrine, it is patently clear-a physician has a duty to inform the patient not only of the medically reasonable alternatives the physician recommends, but of medically reasonable alternatives that the physician does not recommend to the patient or disclose. However, here, Physician would have this Court believe that because the factual scenarios out of which the doctrine arose involved some affirmative violation of the patient's physical integrity, such as the surgical procedures performed in Scott and Smith or the invasive diagnostic tests administered in Parris, a physician's duty to disclose is somehow limited to only those situations. This Court never intended to restrict a physician's duty to disclose to only invasive treatments. The doctrine applies equally to invasive, as well as noninvasive, procedures. And, any other interpretation belies the fundamental premise that "each man [is] considered to be his own master." Scott, 1979 OK 165, ¶ 9, 606 P.2d at 556. At a minimum, Physician should have explained to Allen the associated risks and the alternatives to letting the nail pass through her digestive system along with his reasons for the recommended course of treatment.

¶17 Likewise, Physician's sole reliance on his clinical judgment as a basis for excusing his obligation to disclose is without merit. As discussed and expressly rejected in Scott, the general rule of the "professional standard of care" in determining what must be disclosed "perpetuate[d] medical paternalism by giving the [medical] profession sweeping authority to decide unilaterally what [was] in the patient's best interests." 1979 OK 165, ¶ 13, 606 P.2d at 557. That is, a patient was provided information on a need-to-know basis in conformance with the community's prevailing medical practice. Id. In application, the professional standard would severely limit the protections granted to an injured patient and jeopardize a patient's right of self-determination. Accordingly, this Court declined to impose the professional standard. Id. The basic right to know and decide is the foundation of the full-disclosure rule. Therefore, a physician's duty of disclosure must be measured by his patient's need to know enough information to enable the patient to make an intelligent choice. Id. This duty exists regardless of whether the prescribed treatment is invasive or noninvasive.

¶18 Moreover, Physician's erroneous assertion that he did not "affirmatively treat" Allen is unavailing. Physician disingenuously attempts to distinguish this case from Scott, Smith, and Parris as those cases involved an "affirmative treatment." Although the surgeons in Scott and Smith performed hysterectomies; and the physician in Parris administered multiple cancer screenings-here, Physician prescribed a high-fiber diet which is an affirmative treatment. Under Oklahoma law, treatment is "the use of drugs, surgery, including appliances, manual or mechanical means, or any other means of any nature whatsoever, for the cure, relief, palliation, adjustment or correction of any human ill . . .." Okla. Stat. tit. 59, § 731.1(4). Clearly, Physician's recommenced course of treatment to "eat fiber and let the nail pass" falls under the "any other means of any nature whatsoever, for the cure, relief, palliation, adjustment or correction of any human ill . . ..". Id.

¶19 Physician testified that he made the decision to prescribe a high-fiber diet after reviewing Allen's X-ray and determining the nail had cleared her diaphragm. Although Physician acknowledged that endoscopic or surgical intervention was a medically reasonable alternative, he withheld this information from Allen as it was beyond his scope of practice and experience. Further, Physician had a duty to disclose the alternative invasive interventions even to the extent that it may have required consultation with another medical professional to facilitate the disclosure. Based on his clinical judgment Physician, not Allen, made the decision to let the nail pass through her digestive system. But, that was not solely within Physician's purview.

CONCLUSION

¶20 Today, this Court emphasizes the doctrine of informed consent applies equally to invasive as well as noninvasive medical treatments and treatment alternatives regardless of a physician's scope of practice. To effectively discharge a physician's duty to disclose, a physician must disclose the medically reasonable alternatives regardless of whether it is the physician's preferred method of treatment. The ultimate decision of what treatment a patient receives rests with the patient, not the physician. The trial court erred in holding that Allen's claim of informed consent was not actionable. Resultantly, this matter is remanded for further proceedings consistent with this opinion.

CERTIORARI PREVIOUSLY GRANTED;
OPINION OF COURT OF CIVIL APPEALS VACATED;
TRIAL COURT REVERSED;
CAUSE REMANDED FOR PROCEEDINGS
CONSISTENT WITH THIS OPINION

CONCUR: Reif, C.J., Combs, V.C.J., Kauger, Watt, Edmondson, Colbert, and Gurich, JJ.

DISSENT: Winchester and Taylor, JJ.

FOOTNOTES

[1] Allen and Duncan Regional Hospital entered into a settlement agreement prior to trial. The case against Physician, however, proceeded to trial.






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 21, 826 P.2d 978, 63 OBJ 442, Hadnot v. Shaw
Discussed
 1993 OK 85, 859 P.2d 1081, 64 OBJ 2009, Kluver v. Weatherford Hosp. Authority
Discussed
 2004 OK 2, 87 P.3d 559, WATHOR v. MUTUAL ASSURANCE ADMINISTRATORS, INC.
Discussed
 2012 OK 18, 277 P.3d 1259, PARRIS v. LIMES
Discussed at Length
 1979 OK 165, 606 P.2d 554, SCOTT v. BRADFORD
Discussed at Length
 1984 OK 56, 686 P.2d 285, Smith v. Karen S. Reisig, M.D., Inc.
Discussed at Length