OSCN Found Document:HURLEY v. KIRK

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 HURLEY v. KIRK
2017 OK 55
Case Number: 113383
Decided: 06/20/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 55, __ P.3d __

 

Dana Hurley, Appellant,
v.
Mary Kirk and Art Bowen Appellees,
and
Tulsa Spine & Specialty Hospital, L.L.C., and the Woman's Health Group, Inc. Defendants.

MEMORANDUM OPINION

Colbert, J.

¶1 The main issue on certiorari review is whether the doctrine of informed consent requires a physician to obtain the patient's consent before using a non-doctor to perform significant portions of a surgery for which the physician was engaged to perform thereby subjecting the patient to a heightened risk of injury. After reviewing the record in this case, the Court finds that under Oklahoma's full disclosure rule, a physician must disclose and obtain the patient's informed consent. The Court holds its decision in Scott v. Bradford, 1979 OK 165, 606 P.2d 554, its progeny, and this Court's recent pronouncement in Allen v. Harrison, 2016 OK 44, 374 P.3d 812--rendered during the pendency of this appeal--are dispositive of the issues presented herein.

¶2 This Court again reemphasizes thirty-eight years of Oklahoma's well-established precedent that a patient's right of self-determination is only exercised effectively if the physician discloses to the patient enough information to enable the patient to make an intelligent and informed choice. Allen, 2016 OK 44, 374 P.3d 812; Scott, 1979 OK 165, ¶ 9, 606 P.2d 554, 556. Subsumed in that duty is the physician's obligation "not only to disclose what he intends to do, but to supply information which addresses the question of whether [the physician] should do it." Allen, ¶ 9, 374 P.3d at 816. In other words, "full disclosure of all material risks incident to treatment[1]" must be disclosed. Scott, ¶ 15, 606 P.2d at 558. The scope of a physician's communication then, is measured by his/her patient's need to know. Id. "A risk is material if it would be likely to affect [the] patient's decision." Id. No bright-line rule exists separating the material from the immaterial; it is a fact question. Id. So, "[w]hen non-disclosure of a particular risk is open to debate, the issue is for the finder of facts." Id.

¶3 In 2010, Dr. Mary Kirk, Dana Hurley's gynecologist, recommended Hurley undergo a total laparoscopic hysterectomy. Hurley agreed and Dr. Kirk scheduled the operation.

¶4 In coordinating the surgery, Dr. Kirk specifically requested Art Bowen to assist with the operation. At the time of Dr. Kirk's request, Bowen had previously assisted Dr. Kirk in approximately 40 to 50 cases of which 90 percent were hysterectomies. Bowen, however, was neither Dr. Kirk's nor the hospital's employee. Rather, Bowen was considered an independent contractor. Yet, Bowen worked completely under the supervision and guidance of the employing surgeon.

¶5 Record evidence indicates Bowen's credentials consisted of a degree/certificate as an Emergency Medical Technician from the United States Army Reserves; two Platt College degrees--Certified Surgical Tech, 8/2005 and Licensed Practical Nurse, 3/2009; and a certification as a Certified First Assistant. As with other direct clinical service providers, Bowen was required to apply for and obtain hospital privileges authorizing all activities Bowen sought to perform. However, record testimony and other evidence revealed that Bowen and the parties were unclear as to whether or not the hospital actually approved, disapproved, or deferred Bowen's requested privileges.

¶6 Prior to the scheduled surgery, Dr. Kirk executed a written consent to operate on June 28, 2010. The signed form expressly authorized Dr. Kirk and "whomever he/she (they) may designate as his/her assistants, to perform the following operative or diagnostic procedure(s): total laparoscopic hysterectomy." The form also contained a dedicated section requiring the designation of any persons authorized to perform "significant surgical task(s)." But, that section was left blank.

¶7 On July 10, 2010, Dr. Kirk conducted the laparoscopic hysterectomy as scheduled. Unbeknownst to Hurley, Bowen surgically assisted Dr. Kirk with the surgical operation. During the course of the procedure, Hurley's ureter was perforated. Subsequently, another surgeon was summoned to repair the damaged ureter. Record testimony indicates Hurley remained under anaesthesia for over five hours as no hospital urologist was present. Hurley suffered physical injuries, namely--physical pain, impairment, limited mobility, and was required to use a catheter for a period of time. Additionally, Hurley underwent subsequent corrective surgeries to further repair the damaged ureter and remove scar tissue.

¶8 Record testimony described the laparoscopic hysterectomy as a bifurcated procedure, beginning as a bilateral operation and later transitioning into a unilateral process. Dr. Kirk testified that, it was necessary to have one person on each side of Hurley to grasp and pull the uterus, first to one side, then the other so as to provide tension and facilitate the separation of the uterus from the ovaries and the ligaments. Bowen, under Dr. Kirk's supervision and direction, placed a port on Hurley's right abdomen. Dr. Kirk placed a port on the left abdomen. This allowed the laparoscopic instruments to be placed into the abdomen. During the surgery, Bowen cut and cauterized the right round ligament, the right utero ovarian pedicle and the right broad ligament, and cauterized the uterine artery, with Dr. Kirk grasping the uterus to provide tension. Then, Dr. Kirk performed the same procedure on the left side while Bowen grasped the uterus to provide the tension. According to Dr. Kirk, once the uterine artery was cauterized, the procedure became a unilateral operation, with only Dr. Kirk operating on both sides of the uterine artery, and removing the final connections from the uterus to the bladder.

¶9 Conflicting evidence exists as to whom, Dr. Kirk or Bowen, caused Hurley's injury. Dr. Kirk denied Bowen injured Hurley's right ureter despite her concession that Bowen performed the right side of the hysterectomy with the harmonic scalpel. Yet, Bowen's initial discovery response indicated Bowen's admission that he caused the injury. Both Dr. Kirk and Bowen concede, however, that Bowen used the harmonic scalpel to cauterize and cut the round ligament, utero ovarian pedicle, broad ligament, and uterine artery--all located on the right side of the uterus and in close proximity to the right ureter.

¶10 Equally conflicting was the characterization of Bowen's involvement during Hurley's operation. Dr. Kirk and Bowen contended that Bowen "assisted" with the surgery as "an extension of Physician's hands." On the other hand, Hurley contended Bowen "performed" the right-half of Hurley's surgery while Dr. Kirk performed the left-half.

¶11 A physician's duty to disclose is the foundation of the informed consent doctrine. See Scott,1979 OK 165, 606 P.2d 554. The elements of a lack of informed consent claim are nondisclosure, causation and injury. Id, ¶ 18, 606 P.2d at 558. This Court finds that the district court erred in granting the summary judgment motions. Dr. Kirk had a duty to disclose to Hurley, the use of Bowen and Bowen's involvement in performing the total laparoscopic hysterectomy. Even the executed written consent form required the designation of the "physician's portion of the procedure," and other persons performing significant surgical tasks, which is distinguishable from auxiliary personnel. Additionally, material facts exist as to whether the undisclosed heightened risk of a perforated ureter, was the proximate cause of Hurley's injury.

¶12 Appellant presses an additional proposition for certiorari review: As a matter of law, whether a physician is absolved of liability for permitting an otherwise unqualified, inexperienced person to perform critical parts of a procedure thereby increasing the likelihood of the attendant risk of injury to a patient even if the procedure was performed correctly.

¶13 This inquiry presents mixed questions of law and centers around disputed material facts--namely, Bowen's qualifications, Bowen's level of involvement during Hurley's operation, and the applicable standard of care. Such factual determinations are the sole prerogative of the trier of fact and preclude summary judgment.

¶14 The law is clear and well developed concerning a physician's duty of care and the liability of one whose care exercised is substandard. The law is equally clear as to the cause of actions that may lie against a medical provider who operates without a patient's consent.

¶15 Today, this Court reemphasizes that the scope of a physician's communications must be measured by his/her patient's need to know enough information to enable the patient to make an informed and intelligent choice. In other words, full disclosure of all material risks incident to treatment must be made. As such, no physician has carte blanche to delegate any or all tasks to a non-doctor. To hold otherwise, would obliterate a patient's freedom of choice and reinstate the paternalistic approach to medicine this Court rejected in Scott v. Bradford over thirty-eight years ago. 1979 OK 165, 606 P.2d 554. The scope of the duty to inform is broad enough to include a physician's duty to inform the patient "who" will be performing significant portions of the procedure or surgical tasks.

¶16 The Court of the Civil Appeals' opinion is vacated and the district court's summary judgment order is reversed as to all issues. This matter is remanded for further proceedings consistent with this opinion.

ALL JUSTICES CONCUR.

FOOTNOTES

[1] Treatment, whether invasive or non-invasive, is "the use of drugs, surgery, including appliances, manual or mechanical means, or any other means of any nature whatsoever, for the cure, relief, palliation, adjustment or correction of any human ill. . .." Allen v. Harrison, 2016 OK 44, ¶ ¶ 17-18, 374 P.3d 812, 817-18 quoting Okla. Stat. tit. 59, § 731.1(4). (emphasis added).






 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2016 OK 44, 374 P.3d 812, ALLEN v. HARRISON
Discussed at Length
 1979 OK 165, 606 P.2d 554, SCOTT v. BRADFORD
Discussed at Length